1          **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3       **HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE**

4

5   **UNITED STATES OF AMERICA,**          )
                                           )
6                    **Plaintiff,**        )
                                           )
7        **vs.**                           )   **Case No. CR 20-155 VAP**
                                           )
8   **IMAAD ZUBERI,**                      )
                                           )
9                    **Defendant.**        )
    _____)

10

11      **REPORTER'S TRANSCRIPT OF VIDEO TELECONFERENCE PROCEEDINGS**
                          **CHANGE OF PLEA**
12                   **TUESDAY, JUNE 30, 2020**
                          **9:03 A.M.**
13                   **LOS ANGELES, CALIFORNIA**

14

15

16

17

18

19

20

21

22  _____

23       **MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR**
                FEDERAL OFFICIAL COURT REPORTER
24              350 WEST 1ST STREET, ROOM 4455
                LOS ANGELES, CALIFORNIA  90012
25                     (213) 894-2305

**UNITED STATES DISTRICT COURT**

1                **APPEARANCES OF COUNSEL:**

2

3   **FOR THE PLAINTIFF:**

4      NICOLA T. HANNA
     United States Attorney

5      BY:  DANIEL J. O'BRIEN
          Assistant United States Attorney

6      United States Courthouse
     312 North Spring Street

7      Los Angeles, California  90012

8

9   **FOR THE DEFENDANT:**

10     DECHERT, LLP
     BY:  JEFFREY A. BROWN

11         Attorney at Law
     1095 Avenue of The Americas

12     New York, New York  10036

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                TUESDAY, JUNE 30, 2020; 9:03 A.M.

 2                    LOS ANGELES, CALIFORNIA

 3                            -oOo-

 4             THE COURTROOM DEPUTY:  Calling Item No. 1,

 5    LA CR 20-00155 VAP, United States of America v. Imaad Zuberi.

 6             Counsel, please state your appearances.

 7             MR. O'BRIEN:  Good morning, Your Honor.

 8    Daniel O'Brien appearing on behalf of the United States.

 9             THE COURT:  Good morning.

10             MR. BROWN:  Jeffrey Brown, Dechert, LLP, for

11    Defendant Zuberi.

12             THE COURT:  Thank you.  Good morning.

13             MR. BROWN:  Good morning, Your Honor.

14             THE COURT:  And the defendant is present via video

15    teleconference; is that correct?

16             THE DEFENDANT:  That's correct.

17             THE COURT:  And the defendant has consented to

18    proceeding this morning by way of the videoconference; is that

19    correct?

20             THE DEFENDANT:  That is correct.

21             THE COURT:  Has the Government complied with the

22    requirements of the Crime Victims' Rights Act as to this

23    proceeding?

24             MR. O'BRIEN:  Yes, Your Honor.

25             THE COURT:  All right.  Mr. -- and excuse me.  And
```

**UNITED STATES DISTRICT COURT**

1    the plea is to a single-count Information; is that correct?

2              MR. O'BRIEN:  Correct, Your Honor.

3              THE COURT:  All right.  Mr. Zuberi, you signed a

4    plea agreement that was negotiated on your behalf by your

5    attorney.  And you signed that plea agreement; is that correct?

6              THE DEFENDANT:  That is correct.

7              THE COURT:  So you're here today because you want to

8    withdraw any earlier plea of not guilty in order to enter a

9    plea of guilty to the Information; is that correct?

10             THE DEFENDANT:  That is correct.

11             THE COURT:  All right.  You're charged in the

12   single-count Information with obstruction of justice, in

13   violation of Title 18, United States Code,

14   Section 1512(c)(1)-(2), and 18, United States Code,

15   Section (2).

16             Do you understand what you're charged with in this

17   case?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right.  I'm going to begin by asking

20   my courtroom deputy clerk to swear you in as a witness.  That

21   means your answers to my questions will be given under penalty

22   of perjury.  If you testify falsely or answer any of my

23   questions untruthfully, you could later be prosecuted for the

24   separate crime of perjury.  Do you understand what that means?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Okay.  All right.

2          THE COURTROOM DEPUTY:  Is Imaad Zuberi your true and

3  correct name?

4          THE DEFENDANT:  Correct.

5          THE COURTROOM DEPUTY:  Please raise your right hand.

6          Do you solemnly swear that you will make true

7  answers to the Court's questions regarding your plea, so help

8  you God?

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Mr. Brown, the plea

11  agreement shows it was signed by your client on February 22nd

12  and by you on March 5th.  Did he sign the plea agreement in

13  your presence?

14          MR. BROWN:  I'm trying to recall.  I don't believe

15  that he did.

16          THE COURT:  I'm sorry.  I was addressing defense

17  counsel.

18          MR. BROWN:  That's right.  This is Jeff Brown on

19  behalf of Mr. Zuberi.

20          THE COURT:  I'm sorry.  The screen keeps switching

21  people's locations around.

22          All right.  Did you discuss all of the contents of

23  the plea agreement with him before he signed it?

24          MR. BROWN:  Yes, on multiple occasions.

25          THE COURT:  Does the agreement -- the plea agreement

1  represent the entire disposition of this case so far as you and

2  your client and the U.S. Attorney's Office are concerned?

3          MR. BROWN:  It does, Your Honor.

4          THE COURT:  Have there been any other promises,

5  guarantees, or representations made either to you or your

6  client other than what's contained in the written plea

7  agreement?

8          MR. BROWN:  No, Your Honor.

9          THE COURT:  Thank you.

10          And, Mr. Zuberi, was your lawyer with you when you

11  signed the plea agreement?

12          THE DEFENDANT:  I do not remember, but I think I

13  signed it and faxed it over or scanned it over.

14          THE COURT:  All right.  Before you signed it, did

15  you discuss everything in the plea agreement with your lawyer?

16          THE DEFENDANT:  Yes, Your Honor, I did.

17          THE COURT:  And did you have a chance to ask your

18  lawyer all of your questions about the plea agreement before

19  you signed it?

20          THE DEFENDANT:  I believe so, yes.

21          THE COURT:  Did your lawyer answer your questions to

22  your satisfaction?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Does the plea agreement cover everything

25  that you've been told about your case and what's happening in

```
 1   your case?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Has anyone made you any promises, told

 4   you anything, guaranteed you anything about your case other

 5   than what's in the written plea agreement?

 6              THE DEFENDANT:  No.

 7              THE COURT:  So the plea agreement covers everything?

 8              THE DEFENDANT:  I believe so, yes.

 9              THE COURT:  Well, when you say you believe so, is

10   there --

11              THE DEFENDANT:  Yes.

12              THE COURT:  -- anything that you've been told that's

13   different from what's in the plea agreement?

14              THE DEFENDANT:  No.

15              THE COURT:  And, Mr. O'Brien, is this the written

16   plea agreement the Government extended to the defendant and his

17   counsel?

18              MR. O'BRIEN:  Yes, Your Honor.

19              THE COURT:  Apart from what's in the plea agreement,

20   has the Government made any other promises, representations, or

21   guarantees to the defendant or his counsel?

22              MR. O'BRIEN:  No, Your Honor.

23              THE COURT:  All right.  Thank you.

24              Mr. Zuberi, can you tell me how old you are and what

25   your educational background is?
```

1          THE DEFENDANT:  I'm 49.  A graduate degree.

2          THE COURT:  Are you a citizen of the United States?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Have you received a copy of the

5    Information, the charges against you in this case?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you thoroughly discussed the charge

8    in the Information and your case in general with your lawyer

9    before appearing here today?

10         THE DEFENDANT:  Yes, Your Honor, I have.

11         THE COURT:  Do you understand that the offense in

12   the first -- excuse me -- in the Information is a felony?

13         THE DEFENDANT:  Yes.

14         THE COURT:  If I accept your guilty plea, that means

15   you'll be judged guilty of this felony and that means you will

16   be losing certain civil rights.  You will no longer have the

17   right to vote, to sit on a jury, to hold public office, and to

18   own or possess a firearm, a gun, or ammunition of any sort.  Do

19   you understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Under the laws and the Constitution of

22   the United States, you have a number of rights guaranteed to

23   you in connection with your case.

24         First, you have the right to be represented by a

25   lawyer at all stages of the case.  And if you can't afford to

1    hire a lawyer, the Court will appoint one to represent you at

2    no cost to you.

3          You have the right to plead not guilty and to

4    continue pleading not guilty.

5          You have the right to have a speedy and public trial

6    before a jury, at which the Government would have the burden of

7    proving your guilt beyond a reasonable doubt.

8          You have the right to see and hear the evidence

9    presented at trial and the right to confront and cross-examine

10   any witness who appears at trial to testify against you.

11         You have the privilege against self-incrimination.

12   That means you have the right to remain silent, and that means

13   you can't be forced to testify against your self-interest.

14         You have the right to put on a defense, to put on

15   evidence.

16         You have the right to testify at trial if you

17   voluntarily decide to do so.

18         You have the right to use the Court's subpoena power

19   to make other witnesses appear at trial and testify on your

20   behalf.

21         And if you're convicted after trial, you have the

22   right to appeal your conviction and your sentence to a higher

23   court, a Court of Appeals.

24         Do you understand each of those rights?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Do you have any questions either for me

2     or your lawyer about any of the rights I just described to you?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  The first right I described to you was

5     your right to be represented by a lawyer.  You're not giving up

6     that right if you plead guilty.  But you're giving up all of

7     the other rights that I described to you.  And that includes,

8     to a large extent, giving up your rights to appeal your

9     conviction and your sentence.

10          So in the plea agreement that you signed, in

11    paragraph 16 on page 9, you've agreed that, with the exception

12    of an appeal based on a claim that your guilty plea was

13    involuntary, by pleading guilty, you're waiving and giving up

14    any right to appeal your conviction on this offense in the

15    Information.  Do you understand what that means?

16          THE DEFENDANT:  Correct.  I do.

17          THE COURT:  All right.  And you're -- as to

18    appealing the sentence, in the following paragraph,

19    paragraph 17, you've agreed to give up your right to appeal the

20    way I calculated your sentence, the length of the sentence, so

21    long as it's no more than the statutory maximum, any fine

22    that's imposed, again, as long as it's within the statutory

23    maximum, and terms of supervised release or probation,

24    including the drug and alcohol testing provision.

25          Do you understand that?

```
 1                THE DEFENDANT:  Yes, Your Honor, I do.

 2                THE COURT:  Any questions about your appeal rights

 3    and what you're giving up?

 4                THE DEFENDANT:  No.  I don't have any questions.

 5                THE COURT:  So keeping in mind all the rights I

 6    described to you a moment ago, including your right to a jury

 7    trial, do you wish to give up all of those rights by pleading

 8    guilty?

 9                THE DEFENDANT:  Yes.

10                THE COURT:  Have you told your lawyer everything

11    about your involvement in this case?

12                THE DEFENDANT:  Yes.

13                THE COURT:  And has he advised you about the nature

14    of the charge against you and possible defenses that might

15    apply?

16                THE DEFENDANT:  Um, yes.

17                THE COURT:  Are you on parole or probation with any

18    other court at this time?

19                THE DEFENDANT:  Uh, Jeff can -- my lawyer can answer

20    that.

21                MR. BROWN:  Your Honor, I can -- I can proffer that

22    the answer is no.  He's on pretrial supervision that relates to

23    the case over which you preside that originated from the

24    Central District of California but, otherwise, under no

25    supervision by any court.
```

**UNITED STATES DISTRICT COURT**

1             THE COURT:  Thank you.

2             And have you been advised, Mr. Zuberi, of the

3    maximum possible sentence the Court could impose for this

4    offense?

5             THE DEFENDANT:  Yes.

6             THE COURT:  All right.  Mr. O'Brien, would you state

7    that on the record, please?

8             MR. O'BRIEN:  Yes, Your Honor.

9             In paragraph, uh, 5 of the plea agreement, the

10   maximum penalty is set forth, which is 20 years' imprisonment,

11   a three-year period of supervised release, a fine of $250,000

12   or twice the gross gain or gross loss resulting from the

13   offense, whichever is greatest, and a mandatory special

14   assessment of $100.

15            THE COURT:  And would you advise the defendant of

16   the definition of "supervised release," please?

17            MR. O'BRIEN:  Yes, which is set forth in paragraph 6

18   of the plea agreement.

19            Supervised release is a period of time following

20   imprisonment during which Defendant will be subject to various

21   restrictions and requirements.  The defendant understands that

22   if Defendant violates one or more of the conditions of any

23   supervised release imposed, the defendant may be returned to

24   prison for all or part of the term of supervised release

25   authorized by statute for the offense that resulted in the term

```
 1   of supervised release which could result in defendant serving a
 2   total term of imprisonment greater than the statutory maximum
 3   stated above.
 4              THE COURT:  Thank you.
 5              Mr. Zuberi, do you understand what the attorney for
 6   the Government just stated about the longest possible sentence
 7   you could receive?
 8              THE DEFENDANT:  Yes.
 9              THE COURT:  As you -- as you heard, in the federal
10   system, we don't have parole.  So if you're sentenced to
11   prison, you won't be released early on parole.  When you are
12   released, you're released on what we call supervised release
13   and that means that there's certain rules and conditions that
14   apply.  If you violate any of those, you could be returned to
15   prison.  Do you understand that?
16              THE DEFENDANT:  Yes.
17              THE COURT:  Federal judges are required to consider
18   a number of different things in deciding what is a reasonable
19   sentence in any given case.  One of the things we consult is
20   the United States Sentencing Guidelines.
21              Have you and your lawyer talked about the Sentencing
22   Guidelines and how they might apply in your case?
23              THE DEFENDANT:  Yes.
24              THE COURT:  So after today, you'll be interviewed by
25   a probation officer and he or she will prepare a report after
```

```
 1    doing an investigation of your background and of this offense.
 2              You have the right to see that report and to discuss
 3    it with your lawyer before you're sentenced.
 4              So after the report's been issued, your lawyer and
 5    the lawyer for the Government will each file their sentencing
 6    briefs with the Court, making their recommendations or
 7    arguments as to what your sentence should be.  I consider all
 8    of those things, that is, both sides' sentencing briefs and the
 9    probation office's report, before I make a decision.  But you
10    should understand that it's the judge who makes the decision as
11    to your sentence, not the probation officer, not the lawyers.
12              Do you understand that?
13              THE DEFENDANT:  Yes.  Yes.
14              THE COURT:  In most cases --
15              MR. O'BRIEN:  Your Honor, could I interject?  Daniel
16    O'Brien for the Government.
17              THE COURT:  Yes.
18              MR. O'BRIEN:  There seems -- with regard to the
19    preparation of the presentence report, given the other matter,
20    the other related case that's pending before the Court, um --
21    and I've discussed this with, um, defense counsel.  -- both
22    parties are prepared to waive the preparation of the
23    presentence report.
24              And the reasons are essentially that, um, the
25    allegations that are contained in today's factual basis are set
```

1   forth in the presentence report that was prepared in the

2   Central District of California matter.  Both parties have filed

3   the objection to that report.  And so this is something that

4   the probation office and the parties have already responded to.

5           In particular, the allegations in this factual basis

6   are a mere subset of additional allegations that were raised by

7   the Government with respect to obstruction of justice.  And so

8   we don't really see the value for an additional presentence

9   report to address the same conduct.

10          THE COURT:  All right.  Thank you.

11          So, Mr. Zuberi, you've already been interviewed by

12  the probation office for a presentence report; is that right?

13          THE DEFENDANT:  That is correct.

14          THE COURT:  But that was in connection with the

15  other case, not this case.

16          THE DEFENDANT:  Correct.

17          THE COURT:  And you do have the right to have a

18  separate presentence report done in this case.  Are you willing

19  to waive or give up that right?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Thank you.

22          All right.  The Court, in deciding your sentence, as

23  I said, considers the Sentencing Guidelines.  But the Court in

24  most cases has the ability to give a sentence that's either

25  longer than what's called for under the Guidelines or shorter.

1    Do you understand that?

2            THE DEFENDANT:  Yes, Your Honor, I do.

3            THE COURT:  Has anyone made any threats -- oh, I'm

4    sorry.  So if your sentence is different than what you hoped

5    for or expected, you will not have the right to withdraw your

6    plea of guilty.  Do you understand that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Has anyone made any threats against you

9    or anyone in your family or anyone else in order to get you to

10   plead guilty?

11           THE DEFENDANT:  No.

12           THE COURT:  Other than what's in your plea agreement

13   and the statements today during this hearing and the discussion

14   that you had with your lawyer about the Sentencing Guidelines,

15   has anyone promised you exactly what sentence you would receive

16   if you pled guilty?

17           THE DEFENDANT:  No.

18           THE COURT:  Has anyone promised you anything of any

19   kind in order to get you to plead guilty?

20           THE DEFENDANT:  No.

21           THE COURT:  Do you feel that you understand

22   everything that we have discussed here today?

23           THE DEFENDANT:  I believe I do, yes.

24           THE COURT:  Do you feel that you understand what the

25   consequences are to you of pleading guilty in this case?

```
 1                MR. O'BRIEN:  I have -- I see the judge has dropped
 2    off the communication.
 3                THE COURTROOM DEPUTY:  Yes.
 4                (Pause in the proceedings.)
 5                THE COURT:  All right.  I was asking you,
 6    Mr. Zuberi, if you understand the consequences of pleading
 7    guilty to this charge.
 8                THE DEFENDANT:  Yes, I do.
 9                THE COURT:  Do you feel that you're competent and
10    able to make the decision to plead guilty to this charge?
11                THE DEFENDANT:  Yes.
12                THE COURT:  Is your decision to plead guilty
13    entirely voluntary on your part?
14                THE DEFENDANT:  Yes.
15                THE COURT:  You have the right to have the charge
16    read out loud to you again now.  Do you wish to have the
17    Information read out loud to you at this time?
18                THE DEFENDANT:  Um, I won't be needing that.
19                THE COURT:  You've read it before and discussed it
20    thoroughly with your lawyer?
21                THE DEFENDANT:  Yes.  Yes.  Yes.
22                THE COURT:  Do you understand exactly what you're
23    charged with in this case?
24                THE DEFENDANT:  Obstruction of justice.
25                THE COURT:  Yes.
```

1      So how do you plead to the single-count Information

2  charging you with a violation of Title 18, United States Code,

3  sections 1512(c)(1)-(2) and Section (2), guilty or not guilty?

4           THE DEFENDANT:  Guilty.

5           THE COURT:  Are you pleading guilty because you did

6  what is charged in the Information?

7           THE DEFENDANT:  Yes.

8           THE COURT:  All right.  I'm going to ask the

9  attorney for the Government to state on the record what the

10  elements are of this offense the Government has to prove beyond

11  a reasonable doubt, enough to satisfy each of these elements.

12           All right.  Mr. O'Brien?

13           MR. O'BRIEN:  Yes.  The elements of the offense are

14  set forth in paragraph 4 of the plea agreement.  Um, and they

15  read that the Government must prove:

16           First, the defendant altered, destroyed, mutilated,

17  or concealed a record, document, or other object or attempted

18  to do so with the intent to impair the object's integrity or

19  availability for use in an official proceeding or otherwise

20  obstructed, influenced, or impeded an official proceeding; and

21           Second, that the defendant acted corruptly.

22           THE COURT:  All right.  Mr. Zuberi, do you

23  understand that those are the elements of the charge against

24  you?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Next I'm going to ask Mr. O'Brien to

2    state on the record the evidence that they -- or the facts that

3    the Government believes it could prove to satisfy those

4    elements if your case went to trial.  The Government has to

5    prove each of the elements beyond a reasonable doubt.

6          After he's done, I'm going to ask you whether or not

7    you agree with the statement of facts.  All right?

8          Mr. O'Brien.

9          MR. O'BRIEN:  Okay.  The factual basis is set forth

10   in paragraph 9 of the plea agreement, and it reads as follows:

11         The defendant admits that in or about November 2016,

12   the defendant asked an individual, referred to as "Donor 1," to

13   make a substantial donation to the 58th Presidential Inaugural

14   Committee, referred to as "PIC."  Donor 1 gave the defendant a

15   $50,000 check, intending it as a donation to the PIC.

16         The defendant subsequently made a $900,000 donation

17   to the PIC in the name of an entity he controlled but did not

18   inform the PIC that certain of the funds for his donation came

19   from Donor 1.

20         On or about February 5th, 2019, media organizations

21   reported that a federal grand jury in the Southern District of

22   New York was investigating donations to the PIC, including

23   specifically the defendant's donation.  And we refer to that as

24   the "SDNY Investigation."  Shortly thereafter, the defendant

25   contacted Donor 1 and requested an in-person meeting.

1          On or about February 25th, 2019, the defendant met

2     with Donor 1 at a restaurant in California.  At this meeting,

3     the defendant and Donor 1 discussed the SDNY Investigation and

4     the defendant asked Donor 1, in substance, whether he had been

5     contacted by federal investigators.

6          During the meeting, Donor 1 asked the defendant to

7     refund the $50,000 that Donor 1 had given the defendant as an

8     intended donation to the PIC.  The defendant initially refused

9     to do so.  However, when Donor 1 reminded the defendant that

10    Donor 1 had written on the check itself "Inauguration 17," the

11    defendant promptly agreed to repay Donor 1.

12          The defendant then wrote a check to Donor 1 for

13    $50,000, indicating in the memo line that it was a "refund."

14    Although the defendant wrote the check on February 25th, 2019,

15    i.e., the date of the meeting described above, the defendant

16    back-dated the refund check to February 1st, 2019, intending to

17    obstruct justice by making it appear that the defendant had

18    returned Donor 1's money before he learned of the SDNY

19    Investigation into the source of funds for the $900,000 PIC

20    donation.

21          MR. BROWN:  Your Honor, I believe you may be muted.

22          THE COURT:  Thank you.

23          Mr. Zuberi, do you agree with that statement of

24    facts?

25          THE DEFENDANT:  Yes.  Those are replacement checks

```
1    that --
2                  THE COURT:  All right.  Before you --
3                  THE DEFENDANT:  -- replacement checks that I had
4    given --
5                  THE COURT:  Wait.  Before you go any further, I want
6    you to talk to your lawyer about what you're about to tell me.
7                  THE DEFENDANT:  Okay.
8                  THE COURT:  Mr. Brown, can you privately chat with
9    your client?
10                 MR. BROWN:  Um, sure.  I guess we'll step away and
11   speak by cell phone.  Is that the method?
12                 THE COURT:  That's fine.  Sure.
13                 MR. BROWN:  Okay.
14                 (Pause in the proceedings.)
15                 MR. BROWN:  Thank you, Your Honor, for that
16   opportunity to confer.  Mr. Zuberi is ready to answer your
17   question.
18                 THE COURT:  All right, Mr. Zuberi.  Let's see.
19   Where were we?
20                 Oh.  Do you agree with that statement of facts?
21                 THE DEFENDANT:  Yes.
22                 THE COURT:  Is there anything in it that you
23   disagree with or object to?
24                 THE DEFENDANT:  No.
25                 THE COURT:  And do you agree that if your case went
```

```
 1  to trial, the Government could prove those facts beyond a
 2  reasonable doubt?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  And, Mr. Brown, do you join in agreeing
 5  that the -- the Government has the evidence to prove the facts
 6  just stated beyond a reasonable doubt?
 7              MR. BROWN:  I do, Your Honor.
 8              THE COURT:  All right.  Thank you.
 9              Mr. Zuberi, at this time, are you under the care of
10  any doctor or other medical professional for any illness,
11  injury, or condition?
12              THE DEFENDANT:  No.
13              THE COURT:  Are you taking any medicines regularly?
14              THE DEFENDANT:  Um, yes.
15              THE COURT:  Can you tell me what medicines you're
16  taking and for what condition or sickness?
17              THE DEFENDANT:  For diabetes.
18              THE COURT:  All right.  And what do you take for the
19  diabetes?  Do you take insulin?
20              THE DEFENDANT:  I don't take insulin.  I have the
21  Type II diabetes.  Medications, four medications.
22              THE COURT:  And they're all related to the diabetes?
23              THE DEFENDANT:  Yes.
24              THE COURT:  Do you take any other medications?
25              THE DEFENDANT:  Um, sleeping pills but seldom.
```

1          THE COURT:  All right.  And are those prescription

2    sleeping pills?

3          THE DEFENDANT:  Yes, prescription.

4          THE COURT:  What's the name of the -- what's the

5    name of the medication?

6          THE DEFENDANT:  Lunesta.  Lunesta.

7          THE COURT:  Okay.  In the last 24 --

8          THE DEFENDANT:  I was going to spell it.  Sorry,

9    Your Honor.

10          THE COURT:  Go ahead.

11          THE DEFENDANT:  L-u-n-e-s-t-a.

12          THE COURT:  Do the medications that you take for

13    diabetes, does that affect your ability to think clearly?

14          THE DEFENDANT:  No, it doesn't.

15          THE COURT:  And when's the last time you took

16    Lunesta?

17          THE DEFENDANT:  Um, two days ago.

18          THE COURT:  All right.  In the last 24 hours, have

19    you taken any other medications or had any alcoholic beverages

20    to drink?

21          THE DEFENDANT:  No.  I've taken Allegra-D for

22    allergies.

23          THE COURT:  All right.  Are you receiving any

24    psychological or psychiatric care of any kind?

25          THE DEFENDANT:  No, I'm not.

```
 1              THE COURT:  Do you understand if I accept your

 2    guilty plea today, that the only thing left in your case will

 3    be sentencing?  Do you understand there won't be a trial?

 4              THE DEFENDANT:  Yes.

 5              THE COURT:  Do you know of any reason why I should

 6    not accept your guilty plea?

 7              THE DEFENDANT:  I do not.

 8              THE COURT:  Thank you.

 9              And, Mr. Brown, has your client been competent and

10    able to cooperate with you?

11              MR. BROWN:  Yes, Your Honor.

12              THE COURT:  You discussed the facts of the case in

13    detail with him?

14              MR. BROWN:  Yes.

15              THE COURT:  Are you satisfied there are no

16    meritorious defenses that might apply?

17              MR. BROWN:  Yes.

18              THE COURT:  Are you satisfied that your client's

19    constitutional rights have been observed?

20              MR. BROWN:  Yes.

21              THE COURT:  Have you advised him about the legality

22    or admissibility of any statements, confession, or other

23    evidence in the Government's possession in this case?

24              MR. BROWN:  Yes.

25              THE COURT:  Is your client pleading guilty because
```

1    of any illegally obtained evidence in the Government's

2    possession that you're aware of?

3              MR. BROWN:  Not that I'm aware of, Your Honor.

4              THE COURT:  Are you of the opinion that your client

5    understands the nature of these proceedings and the

6    consequences of his guilty plea?

7              MR. BROWN:  I am.

8              THE COURT:  Has he told you anything about

9    medications, drugs, or other factors that might affect his

10   actions or judgment in any manner?

11             MR. BROWN:  No, Your Honor.

12             THE COURT:  Other than the proceedings today and the

13   contents of the plea agreement and a general discussion of the

14   Sentencing Guidelines and the 3553(a) factors, have you

15   conveyed any promise of a particular sentence to your client?

16             MR. BROWN:  No, Your Honor.

17             THE COURT:  Based on your analysis of the law, after

18   your own investigation of the facts, and after consulting with

19   your client, do you believe it's in his best interest to plead

20   guilty to this charge?

21             MR. BROWN:  I do, Your Honor.

22             THE COURT:  Thank you.

23             Mr. Zuberi, do you feel that you've had enough time

24   to discuss this case and your decision to plead guilty with

25   your lawyer?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Are you satisfied that your lawyer has

3    fully considered any defenses you may have to the charge

4    against you?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Are you satisfied with the

7    representation you've received and the advice that you've been

8    given?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  All right.  Please listen carefully.

11   I'm going to make certain findings.  If you disagree with

12   anything or if you don't understand something I say, please

13   interrupt me right away.

14         The defendant and his counsel have represented to

15   the Court that they have thoroughly discussed all aspects of

16   the charge and any defenses that might apply; the Court having

17   questioned the defendant and his counsel on the offer of his

18   plea of guilty to the single-count Information, a felony; the

19   Court having observed the defendant while he answered the

20   Court's questions and having observed his demeanor and manner

21   while doing so as well as his intelligence and having observed

22   that the defendant does not appear to be under the influence of

23   any medicine, drug, or other substance or factor that might

24   affect his actions or judgment in any way.

25         Therefore, the Court finds that the defendant's

offer of his plea of guilty to the single-count Information has

a factual basis, is free of any coercive influence of any kind,

is voluntarily made with full knowledge of the charge against

him and the consequences of his guilty plea, that no promises

of any kind have been made to him by anyone, and no coercion or

threats of any kind have been exerted upon him in any manner.

So it's ordered that the plea of guilty to the

single-count Information shall be accepted and entered today's

date.

And I understand the sentencing is to take place on

the same day as the sentencing set in the other case pending in

this district?

MR. O'BRIEN:  Yes, Your Honor.

MR. BROWN:  That's correct.

MR. O'BRIEN:  I'd like to add something to that to

inform the Court of the parties' intention.

Prior to the sentencing date, the parties are in

agreement that we would -- we can do this now -- move the Court

to consolidate the two matters for sentencing, in accordance

with the Rule 8, the joinder rules.  Um, and the reason we're

asking for a consolidation is that the conduct in both the

New York matter and the California matter overlap.

As the Court is aware, prior to the New York charge

being brought, the parties in the California matter agreed to

litigate at sentencing whether a two-level enhancement for

obstruction of justice would apply.  And the Government filed
sentencing papers in December of last year alleging several
acts of obstruction, including the obstruction that forms the
basis for the California -- I'm sorry -- the New York
Information and plea agreement.

Um, the, uh, defense has filed sentencing papers in
response to the Government's December 2019 obstruction filing
in which they agreed that the two-level enhancement for
obstruction should apply based upon the conduct that's set
forth in the factual basis to this plea.

And so for that reason, given the overlap of the
conduct, the parties would like to consolidate the sentencing
in the two matters.

Um, we have basically taken the view that if this
case is consolidated for sentencing, um, that any sentence
imposed by the Court as to the New York matter, um, would
result in no effect on the overall Sentencing Guideline
sentence.  Rather, it would be just another contributing factor
for the two-level enhancement for obstruction of justice.

Um, and so I felt that this is probably the best
time to mention it to the Court.  Um, I don't think it
necessarily impacts the plea, but it would affect, obviously,
how we proceed at sentencing.

THE COURT:  All right.  Mr. Brown, do you join in
the request for consolidation of the two cases for sentencing

1    purposes?

2         MR. BROWN:  I do, Your Honor, largely identically

3    for the reasons that AUSA O'Brien has just elucidated.

4         THE COURT:  All right.  I will -- and you've

5    discussed this with your client?

6         MR. BROWN:  I have, Your Honor.  And its advantage

7    is to him.

8         THE COURT:  All right.  So I will grant the oral

9    motion to consolidate the two matters for sentencing purposes.

10        And the date for sentencing, again, Ms. Chung?

11        THE COURTROOM DEPUTY:  August 17th, 2020, at

12   9:00 a.m.

13        THE COURT:  Mr. Zuberi, you're ordered to appear in

14   my courtroom at 350 West 1st Street in Los Angeles on that date

15   and time for sentencing.  And in the meantime, of course you

16   continue to comply with the conditions of your pretrial

17   release.

18        Anything further?

19        MR. O'BRIEN:  Nothing from the Government,

20   Your Honor.

21        MR. BROWN:  Nothing from the defense, Your Honor.

22   And also, thank you to everyone for accommodating me virtually

23   today.

24        THE COURT:  You're welcome.

25        All right.  Thank you.

1          MR. BROWN:  Thank you.

2          (Proceedings concluded at 9:41 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5

6              I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7    REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8    CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9    TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17                    DATED THIS 25TH DAY OF AUGUST, 2020.

18

19

20                    /S/ MYRA L. PONCE
                 _____
21               MYRA L. PONCE, CSR NO. 11544, CRR, RDR
                      FEDERAL OFFICIAL COURT REPORTER
22

23

24

25

**UNITED STATES DISTRICT COURT**