TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (Cal. Bar No. 141720)
Assistant United States Attorney
Deputy Chief, Public Corruption & Civil Rights Section
ELISA FERNANDEZ (Cal. Bar No. 172004)
Assistant United States Attorney
Public Corruption & Civil Rights Section
JUDITH A. HEINZ (Cal. Bar No. 176264)
Assistant United States Attorney
Senior Trial Attorney, National Security Division
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2468/7383/7280
     Facsimile: (213) 894-2927
     E-mail:  daniel.obrien@usdoj.gov
     E-mail:  elisa.fernandez@usdoj.gov
     E-mail:  judith.heinz@usdoj.gov
EVAN N. TURGEON (D.C. Bar No. 1010816)
Trial Attorney, National Security Division
United States Department of Justice
     950 Pennsylvania Avenue, N.W., Suite 7700
     Washington, D.C. 20530
     Telephone: (202) 353-0176
     E-mail:    evan.turgeon@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. LACR19-642-VAP |
|---|---|
| Plaintiff, | No. LACR20-155-VAP |
| v. | GOVERNMENT'S APPLICATION FOR AN ORDER MODIFYING CONDITIONS OF RELEASE FOR DEFENDANT IMAAD SHAH ZUBERI; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DANIEL J. O'BRIEN; [PROPOSED] ORDER LODGED CONCURRENTLY |
| IMAAD SHAH ZUBERI, | |
| Defendant. | |
| | Hearing Date Requested |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files, an application for an order to modify conditions of release for defendant Imaad Shah Zuberi.

This application is based upon the attached Memorandum of Points and Authorities, the Declaration of Daniel J. O'Brien, and the files and records in this case.

Dated: May 5, 2021            Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

      /s/
DANIEL J. O'BRIEN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

As directed by the Court in its May 3, 2021 order extending defendant Imaad Shah Zuberi's ("defendant's") surrender date to June 18, 2021, the government requests that the Court modify defendant's conditions of release as currently set forth in its order dated March 2, 2021.

Circumstances have changed since the Court's March 2 order that justify changes in defendant's bond. In sum, since sentencing, defendant has not demonstrated good faith, honesty with the Court, or a willingness to adhere to the terms and conditions of his release. First, exploiting the Government's agreement that he could travel to Orange County to visit his mother's resting place, he instead traveled to the beach, and then asked the U.S. Probation Office to permit him to stay for the whole weekend. Second, defendant violated his conditions of release on three occasions by failing to comply with his curfew and by delaying his delivery of quitclaim deeds to the government as ordered by the Court. Third, defendant has offered the Court shifting explanations for his failure to be vaccinated -- and still has not committed to be vaccinated -- but cites his lack of vaccination as a basis to avoid reporting to prison. Fourth, defendant continues to have outstanding interest obligations to the Internal Revenue Service ("IRS") in excess of $1,000,000. And fifth, defendant has liquidated assets in the United States that have generated approximately $1.7 million in cash that defendant could transfer outside the country on a moment's notice. Perhaps relatedly, defendant recently offered to provide a $100,000 "gift" to

an individual currently facing fraud and money-laundering charges in both state and federal courts.

Orders previously issued by the Court are now incongruous because they limit defendant's travel to Los Angeles and Orange Counties, yet require him to surrender to the U.S. Bureau of Prisons ("USBOP") in Leavenworth, Kansas. Moreover, delaying defendant's surrender to June 18, 2021 will increase the Government's burden in monitoring defendant's compliance with the bond order -- compliance that has not been flawless to date.

These changes in circumstance justify the following changes to the terms and conditions of defendant's release:

1. Surrender to the U.S. Marshals Service in Los Angeles rather than FCI Leavenworth;

2. Increase defendant's cash bond by at least an additional $1 million to cover his outstanding interest obligations to the IRS;

3. Extend defendant's curfew to cover weekends, that is, from 5:00 p.m. on Fridays to 9:00 a.m. on Mondays;

4. If travel to Orange County continues to be permitted, allow travel to Orange County only for the purpose of visiting his mother's gravesite at the Islamic Society of Orange County, Garden Grove, California and only upon 24-hour advance notice to the U.S. Attorney's Office and the U.S. Probation Office. If the defendant wishes to visit with family or physicians in Orange County, he should specify their names and addresses and provide similar notice.

**II. ARGUMENT**

    **A.  Violations of Conditions of Release**

Defendant has violated his conditions of release on three occasions--twice by failing to comply with his curfew and once by his

month-long delay in delivering two quitclaim deeds in favor of the government that the Court ordered to guarantee his payment of restitution and fines in its February 18, 2021 judgement and commitment order.  (Dkt. 351)[1]

### B. Recreational Travel to Orange County

As discussed at the May 3 hearing, the Government agreed to defendant's request to travel to Orange County during his release so that he could visit his mother's burial site.  (Dkt. 328; Exhibit 1) Defendant also expressed a desire to visit elderly family members and a physician.  (Exhibit 1)

In February 2021, defendant did travel to Orange County, but visited Huntington Beach.  He then requested that the Probation Officer permit him to stay there for the weekend, which would have violated the terms and conditions of the bond order.  (Dkt. 351) This unnecessary travel justifies a modification of the terms under which defendant is permitted to travel to Orange County.

### C. Generation of Portable Wealth

Although defendant has now sold the two properties that were the subject of the quitclaim deeds to satisfy his restitution and fine obligations, he still has an outstanding obligation to pay accrued interest to the IRS that exceeds $1 million.  (O'Brien Declaration, ¶ 12)

Moreover, those sales have generated approximately $1.7 million in cash that could be transferred out of the country should defendant attempt to flee.  (O'Brien Declaration, ¶¶ 3-7; Exhibits 2 & 3)

---

[1] References to "Dkt" are to the Court's docket in case number CR 19-642-VAP.  References to "Exhibit" are to exhibits to the attached declaration of Daniel J. O'Brien.

At the May 3 hearing on defendant's motion to extend his surrender date, in response to a question raised by the Court, the defendant represented that outstanding mortgages on the properties were not paid by escrow. However, information derived from the Government's investigation shows that, in fact, the California 8 property had no encumbrances and the Rosemead 32 property had a mortgage of approximately $3.55 million dollars that was paid by escrow. (O'Brien Declaration, ¶ 4) Thus, the resulting transfers to defendant's bank accounts totaling $3.63 million were unencumbered. (O'Brien Declaration, ¶ 5)

As of May 4, 2021, the total amount in the two accounts that received the proceeds of the property sales is $3,429,344. The defendant has issued a $1,750,400 check to the Clerk of Court drawn on the HSBC Rosemead account to pay the fines and special assessment ordered by the Court. Once that check clears, the balance in those two accounts should be approximately $1,678,944. (O'Brien Declaration, ¶ 6-7)

Defendant controls several other accounts within the United States that total in excess of $231,000. (O'Brien Declaration, ¶¶ 8-10; Exhibits 2, 3 & 4)

The remaining real properties defendant owns in the United States have a value of approximately $5.66 million.[2]

The Government has tried to determine what cash defendant has available to him overseas. The most recent data available to the

---

[2] See Docket 299, identifying the value of U.S. real estate holdings, and Exhibit 9, a letter from defense counsel identifying payments totaling $15,705,080.11 that satisfy obligations set forth in the Court's judgement and commitment order, which were primarily derived from the sale of some of those real estate holdings.

4

Government is defendant's FBARs, filed on October 10, 2020, that identify foreign accounts and maximum balances during the 2019 calendar year. The total of those maximum balances was approximately $4.3 million. (Exhibit 5) The Government requests that the Court set a hearing on this matter during the week of May 10, 2021 so that the Government may issue subpoenas to gather more current data with respect to defendant's assets.

In addition, in prior filings, defendant represented to the Court and the Probation Office that he holds title to five real properties in Pakistan[3] sufficient in value to pay millions of dollars in tax debt.[4]

At the May 3 hearing, the Court ordered a prohibition on defendant transferring any funds out of the United States. Given the amount of money at defendant's disposal, both inside and outside the United States, and his continuing obligation to the IRS in excess of $1 million, the Court should also increase the amount of defendant's cash bond.

**D.   Association with Defendant Charged with Money Laundering**

After the May 3 hearing, the Government received information from prosecutors with the California Attorney General's Office that elevates the Government's concern as to defendant's post-conviction activities. Defense counsel Ashwin Ram is also counsel for Richard Ayvazyan, a defendant in *People v. Tamara Dadyan*, Case No. BA 484293. The indictment in that case charges Mr. Ayvazyan with a multi-million dollar fraud scheme and money laundering. (Exhibit 6). The money laundering scheme is a complex one that involves the use of

---

[3] PSR, paragraph 209, footnote 3.
[4] Dkt. 136, p. 16.

5

fictitious and assumed identities.  (*Id*.)  Another indictment in federal court, *United States v. Richard Ayvazyan*, CR 20-579(A)-SVW, charges Mr. Ayvazyan with conspiracy, fraud, aggravated identity theft, and money laundering.  (Exhibit 7)  The federally charged money laundering scheme is similarly complex.  (*Id*.)

In discussions with state prosecutors, Mr. Ram conveyed an offer from defendant Zuberi to provide a $100,000 *gift* to Mr. Ayvazyan that would serve as a "bail premium" for the payment of Mr. Ayvazyan's bond.  (Exhibit 8)  At the time of the offered gift, defendant had never met Mr. Ayvazyan and only heard of him through Mr. Ram.  Under these circumstances, and given defendant's history, the Government finds defendant's "gift" characterization to be dubious and questions whether it might actually represent a fee paid to a professional money launderer.

### E. Timing and Place of Surrender

At the time of sentencing, the Court ordered defendant to report to the place of incarceration designated by the USBOP.  The USBOP has now designated defendant to report to FCI Leavenworth, Kansas.  The defendant's current travel restrictions prohibit him from leaving Los Angeles and Orange Counties, California.  To reconcile this inconsistency and limit the possibility of flight, the defendant should be required to report to the U.S. Marshals Service in Los Angeles, California.

The Court has extended the time of surrender to June 18 to provide defendant with another opportunity to be vaccinated.  Given the heightened concerns regarding flight and the extended period of supervision, defendant's curfew should be extended to cover weekends.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the terms and conditions of defendant's release be modified to include:

1. Surrender to the U.S. Marshals Service in Los Angeles rather than FCI Leavenworth;

2. Increase defendant's cash bond by at least an additional $1 million to match defendant's outstanding obligations to the IRS;

3. Extend curfew to cover weekends, that is, from 5:00 p.m. on Fridays to 9:00 a.m. on Mondays;

4. If travel to Orange County is still permitted by the Court, allow Orange County travel only for the purpose of visiting his mother's gravesite at the Islamic Society of Orange County, Garden Grove, California, and only upon 24-hour advance notice to the U.S. Attorney's Office and the U.S. Probation Office.  If the defendant wishes to visit with family or physicians in Orange County, he should specify their names and addresses and provide similar notice.

In addition, the Court should calendar a hearing on this motion during the week of May 10, 2021 so that the government may issue subpoenas to further its investigation defendant's assets and financial transactions.

**DECLARATION OF DANIEL J. O'BRIEN**

I, DANIEL J. O'BRIEN, declare as follows:

1. I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California responsible for the matter of *United States v. Imaad Shah Zuberi*, CR 19-642-VAP.

2. Attached as Exhibit 1 is email correspondence that discusses defendant's desire to travel to Orange County during the period of his post-conviction release.

3. Attached as Exhibit 2 and Exhibit 3, are financial records obtained from HSBC and East West Bank, respectively. The HSBC records show that on April 16, 2021, an account controlled by defendant (California 8) received a wire transfer from Granite Escrow and Settlement in the amount of $4,015,623. The East West Bank records show that on April 22, 2021, an account controlled by defendant (Rosemead 32) received a wire transfer from Central Escrow Group in the amount of $5,227,835.32.

4. On May 4, 2021, I spoke to Internal Revenue Service ("IRS") Special Agent ("SA") John Lucero who informed me that he reviewed a report based upon public records that did not reflect encumbrances on the California 8 property and a $3.55 million mortgage on the Rosemead 32 property. SA Lucero accessed other public records to determine the sales price of the Rosemead 32 property which was revealed to be $8.88 million. SA Lucero met with an employee of Central Escrow Group who informed him that the mortgage on the Rosemead 32 property was paid by escrow. SA Lucero noted that the difference ($5.33 million) between the sales price and mortgage

8

payment roughly equals the amount wired from escrow to defendant's East West bank account ($5.28 million).

    5.    The HSBC and East West Bank records show that defendant issued two checks to pay restitution obligations imposed by the Court: a $3,005,080 check drawn on the California 8 account and a $2,700,000 check drawn on the Rosemead 32 account. Therefore, the sale of these two properties generated approximately $3,631,544 in unencumbered cash for defendant's own use.

    6.    The only other major transfer from either of these two accounts over the pertinent time frame was a payment to the law firm of Steptoe and Johnson. Balances on the HSBC and East West Bank accounts as of May 4 were approximately $1,350,761 and $2,078,583, respectively, for a total of $3,429,344.

    7.    On May 5, 2021, I received from defense counsel a copy of a check dated April 28, 2021 made payable to the Clerk of the U.S. District Court in the mount of $1,750,400 for payment of the fines and special assessment ordered by the Court. Once this check clears, the balance in defendant's HSBC and East West Bank accounts should be approximately $1,678,944.

    8.    Attached as Exhibit 4 are bank records obtained from Universal Bank. Balances from these accounts (Duarte and ISZ) total in excess of $94,000.

    9.    Balances in other HSBC (Fountain) and East West Bank (McCullough) accounts total in excess of $20,000.

    10.    On May 5, 2021, SA Lucero informed me that he received information from USC Credit Union that defendant still maintains three accounts that total in excess of $117,000. SA Lucero added that a subpoena issued to One West Bank is still pending.

11. Attached as Exhibit 5 is a Report of Foreign Bank and Financial Accounts ("FBAR") filed by defendant in October 2020 reporting foreign accounts held by defendant for the 2019 calendar year.

12. On May 5, 2021, I received correspondence from IRS Revenue Agent Farrell Stevens who informed me of the status of defendant's tax obligations. He stated that once the balance due and credits are reconciled, there will be a balance of accrued interest due in the amount of $1,052,794.74. He further anticipates that the offsetting credits will result in a $32,000 reduction in the accrued interest leaving a final balance of about $1,020,000.

13. Attached as Exhibit 6 is a Declaration of Detective Lyle Barnes that summarizes charges and evidence in the matter of *People v. Tamara Dadyan*, Case No. BA 484293.

14. Attached as Exhibit 7 is a Superseding Indictment filed in the matter of *United States v. Richard Ayvazyan*, CR 20-579(A)-SVW.

15. On May 3 and 5, 2021, I spoke to two prosecutors with the California Attorney General's Office, Deputy Attorney Generals Jessica Owen and Kristopher Young, who are responsible for the prosecution of Richard Ayvazyan. On May 3, they informed me that Ashwin Ram, counsel for Ayvazyan, stated that he had a client, Imaad Zuberi, who had heard about Ayvazyan and might gift Ayvazyan $100,000 for his bond. Attached as Exhibit 8 is email correspondence between counsel for Mr. Ayvazyan and state prosecutors that reference defendant paying a "bail premium" for the benefit of Mr. Ayvazyan. On May 5, Ms. Owen and Mr. Young informed me that Mr. Zuberi testified at Mr. Ayvazyan's bond heard that day. Zuberi testified that he had never met Mr. Ayvazyan prior to the hearing and that he

became aware of Mr. Ayvazyan through his counsel, Ashwin Ram.  The court ultimately struck Mr. Zuberi's testimony because he believed he might be exposed to additional criminal liability should he continue to testify.

16.  Attached as Exhibit 9 is correspondence from defense counsel detailing payments made in satisfaction of defendant's restitution and fine obligations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on May 5, 2021.

DANIEL J. O'BRIEN