EXHIBIT 7

03/09/2021

DM

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2020 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>    "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>    "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan,"<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and<br>    "Anton Kudiumov,"<br>ARMAN HAYRAPETYAN,<br>EDVARD PARONYAN,<br>  aka "Edvard Paronian" and<br>    "Edward Paronyan," and<br>VAHE DADYAN,<br><br>          Defendants. | CR 20-579(A)-SVW<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to<br>Commit Bank Fraud and Wire Fraud;<br>18 U.S.C. § 1343: Wire Fraud; 18<br>U.S.C. § 1344(2): Bank Fraud and<br>Attempted Bank Fraud; 18 U.S.C.<br>§ 1028A(a)(1): Aggravated Identity<br>Theft; 18 U.S.C. § 1956(h): Money<br>Laundering Conspiracy; 18 U.S.C.<br>§ 1956(a)(1)(B)(i): Money<br>Laundering; 18 U.S.C. § 3147:<br>Offense Committed While on<br>Release; 18 U.S.C. §§ 981, 982,<br>1028 and 28 U.S.C. § 2461(c):<br>Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

A.    INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Indictment:

1.    Synthetic identities were false identities created using certain personally identifiable information, such as names, dates of birth, and social security numbers, that typically consisted of a combination of stolen and fictitious information.  Synthetic identities could be used to create false business names and entities.

THE DEFENDANTS

2.    Defendant RICHARD AYVAZYAN, also known as ("aka") "Richard Avazian" and "Iuliia Zhadko" ("R. AYVAZYAN"), was a resident of Encino, California.

3.    Defendant MARIETTA TERABELIAN, aka "Marietta Abelian" and "Viktoria Kauichko," was a resident of Encino, California.  Defendant TERABELIAN and defendant R. AYVAZYAN were married.

4.    Defendant ARTUR AYVAZYAN, aka "Arthur Ayvazyan" ("A. AYVAZYAN"), was a resident of Encino, California.  Defendant A. AYVAZYAN and defendant R. AYVAZYAN were brothers.

5.    Defendant TAMARA DADYAN ("T. DADYAN") was a resident of Encino, California.  Defendant T. DADYAN and defendant A. AYVAZYAN were married.

6.    Defendant MANUK GRIGORYAN, aka "Mike Grigoryan" and "Anton Kudiumov," was a resident of Sun Valley, California.

7.    Defendant ARMAN HAYRAPETYAN was a resident of Glendale, California.

2

8.     Defendant EDVARD PARONYAN, aka "Edvard Paronian" and "Edward Paronyan," was a resident of Granada Hills, California.

9.     Defendant VAHE DADYAN ("V. DADYAN") was a resident of Glendale, California.

THE PAYCHECK PROTECTION PROGRAM

10.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

11.     In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the small business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments."  The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges."  In the PPP loan application, the applicant was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were

3

used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses.

12. A business's PPP loan application was received and processed, in the first instance, by a participating financial institution. If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies.

13. PPP loan proceeds were required to be used by the business on certain permissible expenses, namely, payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period of time and used at least a minimum amount of the PPP loan proceeds towards payroll expenses.

THE ECONOMIC INJURY DISASTER LOAN PROGRAM

14. The Economic Injury Disaster Loan Program ("EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

15. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

16. To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the

4

case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

17. EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described in paragraph 15 above. Any funds issued under an EIDL loan were issued directly by the SBA.

18. EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

RELEVANT LENDING INSTITUTIONS

19. Lenders A, B, C, D, E, G, and H were financial institutions insured by the Federal Deposit Insurance Company ("FDIC") that were approved SBA lenders of PPP loans.

20. Lender F was a financial institution that was an approved SBA lender of PPP loans.

BANK ACCOUNTS CONTROLLED BY THE DEFENDANTS

21. Banks 1, 2, 3, 4, 5, 6, 7, and 8 were financial institutions insured by the FDIC.

22.   Defendant R. AYVAZYAN controlled and/or was a signatory (in his legal name or using one of his aliases) on the following bank accounts:

a.   A business checking account at Bank 1 in the name of "Timeline Transport, Inc." (the "Timeline Transport Bank 1 Account");

b.   A business checking account at Bank 2 in the name of "Inception Ventures Inc." (the "Inception Ventures Bank 2 Account");

c.   A business checking account at Bank 3 in the name of "Iuliia Zhadko dba Top Quality Contracting" (the "TQC Bank 3 Account");

d.   A business checking account at Bank 7 in the name of "Mod Interiors, Inc." (the "Mod Interiors Bank 7 Account");

e.   A business checking account at Bank 5 in the name of "Turing Info Solutions Inc." (the "Turing Info Bank 5 Account"); and

f.   A personal checking account at Bank 5 in the name of "Iuliia Zhadko" (the "Zhadko Bank 5 Account").

23.   Defendant TERABELIAN controlled and/or was a signatory (in her legal name or using one of her aliases) on the following bank accounts:

a.   A personal checking account at Bank 2 in the name of defendant TERABELIAN (the "Terabelian Bank 2 Account");

b.   A business checking account at Bank 2 in the name of "Runyan Tax Service Inc." (the "Runyan Tax Bank 2 Account"); and

c.   The Mod Interiors Bank 7 Account.

24.   Defendant A. AYVAZYAN controlled and/or was a signatory (in his legal name or using his alias) on the following bank accounts:

a.   A business checking account at Bank 2 in the name of "Allstate Towing and Transport LLC" (the "Allstate Towing Bank 2 Account");

b.   A business checking account at Bank 4 in the name of "Allstate Towing and Transport LLC" (the "Allstate Towing Bank 4 Account"); and

c.   A personal checking account at Bank 8 in the name of A.D. (the "A.D. Bank 8 Account").

25.  Defendant T. DADYAN controlled and/or was a signatory on the following bank accounts:

a.   A business checking account at Bank 3 in the name of "Secureline Realty and Funding, Inc." (the "Secureline Realty Bank 3 Account");

b.   A business checking account at Bank 5 in the name of "ABC Realty Advisors, Inc." (the "ABC Realty Bank 5 Account");

c.   A business checking account at Bank 6 in the name of "Secureline Realty and Funding, Inc." (the "Secureline Realty Bank 6 Account"); and

d.   The A.D. Bank 8 Account.

26.  Defendant GRIGORYAN controlled and/or was a signatory (in his legal name or using one of his aliases) on the following bank accounts:

a.   A business checking account at Bank 4 in the name of "G&A Diamonds" (the "G&A Diamonds Bank 4 Account");

b.   A business checking account at Bank 2 in the name of "Redline Auto Mechanics" (the "Redline Auto Mechanics Bank 2 Account"); and

c.  A personal checking account at Bank 2 in the name of "Anton Kudiumov" (the "Kudiumov Bank 2 Account").

27.  Defendant HAYRAPETYAN controlled and/or was a signatory on the following bank accounts:

a.  A business checking account at Bank 5 in the name of "Arman Hayrapetyan DBA S. Construction" (the "S. Construction Bank 5 Account");

b.  A business checking account at Bank 5 in the name of "Arman Hayrapetyan DBA H. Construction Co." with account number ending in 1511 (the "H. Construction 1511 Bank 5 Account");

c.  A business checking account at Bank 5 in the name of "Arman Hayrapetyan DBA H. Construction Co." with account number ending in 9066 (the "H. Construction 9066 Bank 5 Account"); and

d.  A personal checking account at Bank 5 in the name of defendant HAYRAPETYAN.

28.  Defendant PARONYAN controlled and was a signatory (in his legal name or using his alias) on the following bank accounts:

a.  A business checking account at Bank 5 in the name of "Redline Auto Collision, Inc." (the "Redline Auto Collision Bank 5 Account"); and

b.  A personal checking account at Bank 5 in the name of defendant PARONYAN (the "Paronyan Bank 5 Account").

29.  Defendant V. DADYAN controlled and was a signatory on the following bank account:

a.  A business checking account at Bank 3 in the name of "Voyage Limo LLC" (the "Voyage Limo Bank 3 Account").

B. THE OBJECTS OF THE CONSPIRACY

30. Beginning no later than in or around March 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN conspired with one another and with others known and unknown to the Grand Jury to commit: (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) bank fraud, in violation of Title 18, United States Code, Section 1344(2).

C. THE MANNER AND MEANS OF THE CONSPIRACY

31. The objects of the conspiracy were to be carried out, and were carried out, in substance, as follows:

a. Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other coconspirators, used and caused to be used, stolen, fictitious, and synthetic identities of individuals to submit fraudulent applications for PPP and EIDL loans.

b. Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other coconspirators, used and caused to be used, stolen, fictitious, and synthetic business names to submit fraudulent applications for PPP and EIDL loans.

c. Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other coconspirators, made and caused to be made, false statements to the SBA and financial institutions in connection with the fraudulent applications for PPP and EIDL loans, including false

9

1   representations regarding the number of employees to whom the

2   companies had paid wages and false certifications that the loans

3   would be used for permissible business purposes.

4         d.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

5   DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together

6   with other coconspirators, electronically submitted, and caused to be

7   submitted, false documents to the SBA and financial institutions in

8   support of the fraudulent PPP and EIDL loan applications, including

9   false or fictitious tax documents, payroll records, bank records, and

10   identification documents.

11         e.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

12   DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together

13   with other coconspirators, directed the other defendants and their

14   coconspirators to deposit PPP and EIDL loan proceeds into bank

15   accounts that defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

16   DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, and their

17   coconspirators controlled.

18         f.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

19   DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together

20   with other coconspirators, laundered and used the fraudulently

21   obtained PPP and EIDL loan proceeds for their own personal benefit

22   and for the benefit of their coconspirators, including for expenses

23   prohibited under the requirements of the PPP and EIDL programs, such

24   as the purchase of residential properties at Address 1 in Tarzana,

25   California ("Residential Property 1"), Address 2 in Glendale,

26   California ("Residential Property 2"), and Address 3 in Palm Desert,

27   California ("Residential Property 3"), gold coins, diamonds, jewelry,

28

luxury watches, fine imported furnishings, designer handbags and clothing, cryptocurrency, and securities.

32. As part of the conspiracy, between in or around March 2020 and in or around August 2020, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other coconspirators, submitted and caused the submission of at least 151 fraudulent PPP and EIDL loan applications seeking a total of at least $21.9 million in PPP and EIDL proceeds from the SBA and at least 11 financial institutions, and received a total of at least $18 million in PPP and EIDL loan proceeds from the SBA and financial institutions.

D.  OVERT ACTS

33. On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other coconspirators, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California:

**S. Construction and H. Construction PPP Loans**

Overt Act No. 1:    On or about April 16, 2020, defendant HAYRAPETYAN, together with other coconspirators, used the name and social security number of D.S., a real person, to submit and cause to be submitted to Lender H an application in the name of S. Construction, seeking a PPP loan in the amount of $182,637, which application: (a) falsely represented that S. Construction had 16 employees and an average monthly payroll of $73,055; and (b) falsely certified that the purported applicant, D.S., would use the loan proceeds only for permissible business purposes.

11

Overt Act No. 2:    On or about April 18, 2020, defendant HAYRAPETYAN together with other coconspirators, used the name and social security number of M.H., a real person, to submit and cause to be submitted to Lender H an application in the name of H. Construction, seeking a PPP loan in the amount of $130,000, which application: (a) falsely represented that H. Construction had 12 employees and an average monthly payroll of $52,000; and (b) falsely certified that the purported applicant, M.H., would use the loan proceeds only for permissible business purposes.

Overt Act No. 3:    On or about May 1, 2020, defendant HAYRAPETYAN, together with other coconspirators, caused Lender H to wire approximately $182,637 in proceeds from the S. Construction PPP loan to the S. Construction Bank 5 Account.

Overt Act No. 4:    On or about May 1, 2020, defendant HAYRAPETYAN caused Lender H to wire approximately $130,000 in proceeds from the H. Construction PPP loan to the H. Construction 1511 Bank 5 Account.

Overt Act No. 5:    On or about May 4, 2020, defendant HAYRAPETYAN, together with other coconspirators, caused approximately $250,000, comprised in part of the S. Construction PPP loan proceeds, to be wired from the S. Construction Bank 5 Account to the H. Construction 9066 Bank 5 Account.

Overt Act No. 6:    On or about May 4, 2020, defendant HAYRAPETYAN, together with other coconspirators, caused approximately $200,000, comprised in part of the H. Construction PPP loan proceeds, to be wired from the H. Construction 1511 Bank 5 Account to the H. Construction 9066 Bank 5 Account.

1    Overt Act No. 7:    On or about May 4, 2020, defendant
2  HAYRAPETYAN, together with other coconspirators, caused a check for
3  approximately $50,000, drawn on the H. Construction 9066 Bank 5
4  Account and comprised in substantial part of the PPP loan proceeds
5  for S. Construction and H. Construction, to be written to the order
6  of Fiber One Media, which check was endorsed on the back with the
7  name of defendant TERABELIAN's alias "Viktoria Kauichko."

8                    **Secureline Realty PPP Loans**

9    Overt Act No. 8:    On or about April 22, 2020, defendant T.
10 DADYAN, together with other coconspirators, submitted and caused to
11 be submitted to Lender D an application in the name of Secureline
12 Realty and Funding, Inc. ("Secureline Realty") seeking a PPP loan in
13 the amount of $122,838, which application: (a) falsely represented
14 that Secureline Realty had eight employees, including employees for
15 whom it had paid wages and payroll taxes; and (b) falsely certified
16 Secureline Realty would use the loan proceeds only for permissible
17 business purposes.

18   Overt Act No. 9:    On or about April 22, 2020, defendant T.
19 DADYAN, together with other coconspirators, submitted and caused to
20 be submitted to Lender D false documents, including fake Internal
21 Revenue Service ("IRS") Forms 940 and 941, in support of the
22 Secureline Realty PPP loan application.

23   Overt Act No. 10:    On or about May 7, 2020, defendant T.
24 DADYAN, together with other coconspirators, caused Lender D to wire
25 approximately $122,838 in proceeds from the Secureline Realty PPP
26 loan to the Secureline Realty Bank 3 Account.

27   Overt Act No. 11:    On or about May 9, 2020, defendant T.
28 DADYAN, together with other coconspirators, submitted and caused to

be submitted to Lender E an application in the name of Secureline
Realty seeking a PPP loan in the amount of $137,500, which
application: (a) falsely represented that Secureline Realty had eight
employees, including employees for whom it had paid wages and payroll
taxes; and (b) falsely certified Secureline Realty would use the loan
proceeds only for permissible business purposes.

Overt Act No. 12:   On or about May 11, 2020, defendant T.
DADYAN, together with other coconspirators, caused Lender E to wire
approximately $137,500 in proceeds from the Secureline Realty PPP
loan to the Secureline Realty Bank 6 Account.

Overt Act No. 13:   On or about May 27, 2020, defendant T.
DADYAN, together with other coconspirators, caused a check for
approximately $136,000, drawn on Secureline Realty Bank 6 Account and
comprised in substantial part of the PPP loan proceeds for Secureline
Realty, to be deposited into the ABC Realty Bank 5 Account.

Overt Act No. 14:   On or about June 12, 2020, defendant T.
DADYAN, together with other coconspirators, caused approximately
$120,010, which in substantial part came from the PPP loan proceeds
for Secureline Realty, to be withdrawn from the Secureline Realty
Bank 3 Account and subsequently caused approximately $120,000 to be
deposited to the ABC Realty Bank 5 Account.

Overt Act No. 15:   On or about June 17, 2020, defendant T.
DADYAN, together with other coconspirators, caused approximately
$200,000 to be wired from the ABC Realty Bank 5 Account to the
Inception Ventures Bank 2 Account, for which defendant R. AYVAZYAN
was the sole signatory.

Overt Act No. 16:   On or about June 22, 2020, defendant
R. AYVAZYAN, together with other coconspirators, caused approximately

14

$435,000, which in part came from the approximately $200,000 in PPP loan funds defendant R. AYVAZYAN received from defendant T. DADYAN, to be wired from the Inception Ventures Bank 2 Account to Escrow Company 1 to be used to as part of the $3,250,000 purchase price for Residential Property 1, which was purchased in the names of defendants R. AYVAZYAN and TERABELIAN.

## Top Quality Contracting PPP Loan

<u>Overt Act No. 17:</u>  On or about April 30, 2020, defendant R. AYVAZYAN, together with other coconspirators, used the name of M.Z., a real person, to submit and cause to be submitted to Lender B an application in the name of Top Quality Contracting ("TQC"), seeking a PPP loan in the amount of $130,000.

<u>Overt Act No. 18:</u>  On or about April 30, 2020, in connection with the TQC PPP loan application, defendant R. AYVAZYAN, together with other coconspirators, submitted and caused to be submitted to Lender B a fake copy of M.Z.'s California driver's license and a fake IRS Form 940 purportedly prepared and filed by M.Z.

<u>Overt Act No. 19:</u>  On or about May 8, 2020, defendant R. AYZAYAN, together with other coconspirators, caused Lender B to wire approximately $130,000 in proceeds from the TQC PPP loan to the TQC Bank 3 Account, which listed defendant R. AYVAZYAN's alias "Iuliia Zhadko" and M.Z. as the only signatories.

## Allstate Towing PPP Loan

<u>Overt Act No. 20:</u>  On or about May 2, 2020, defendant A. AYVAZYAN, together with other coconspirators, submitted and caused to be submitted to Lender C an application in the name of Allstate Towing and Transport LLC ("Allstate Towing") seeking a PPP loan in the amount of $124,000, which application: (a) falsely represented

that Allstate Towing had 11 employees, including employees for whom it had paid wages and payroll taxes; and (b) falsely certified Allstate Towing would use the loan proceeds only for permissible business purposes.

Overt Act No. 21: On or about May 2, 2020, defendant A. AYVAZYAN, together with other coconspirators, submitted and caused to be submitted to Lender C false documents, including fake IRS Forms 940 and 941, in support of the Allstate Towing PPP loan application.

Overt Act No. 22: On or about May 5, 2020, defendant A. AYVAZYAN, together with other coconspirators, caused Lender C to wire approximately $124,000 in proceeds from the Allstate Towing PPP loan to the Allstate Towing Bank 4 Account.

Overt Act No. 23: On or about May 21, 2020, defendant A. AYVAZYAN, together with other coconspirators, caused approximately $80,000, which in substantial part came from the Allstate Towing PPP loan proceeds, to be wired from the Allstate Towing Bank 4 Account to the Allstate Towing Bank 2 Account with the memo "BUSINESS TRANSFER FOR PAYROLL PAYROLL [sic]."

Overt Act No. 24: On or about June 3, 2020, defendant A. AYVAZYAN, together with other coconspirators, caused approximately $93,000, which in substantial part came from the Allstate Towing PPP loan proceeds, to be wired from the Allstate Towing Bank 2 Account to Escrow Company 1 to be used as part of the $3,250,000 purchase price for Residential Property 1, which was purchased in the names of defendants R. AYVAZYAN and TERABELIAN.

### G&A Diamonds and Redline Auto Collision Loans

Overt Act No. 25: On or about May 3, 2020, defendant GRIGORYAN, together with other coconspirators, including defendants

16

R. AYVAZYAN and TERABELIAN, submitted and caused to be submitted to Lender C an application in the name of G&A Diamonds seeking a PPP loan in the amount of approximately $113,750, which application: (a) falsely represented that G&A Diamonds had 12 employees, including employees for whom it had paid wages and payroll taxes; and (b) falsely certified G&A Diamonds would use the loan proceeds only for permissible business purposes.

Overt Act No. 26:   On or about May 3, 2020, in support of the G&A Diamonds PPP loan application, defendant GRIGORYAN, together with other coconspirators, including defendants R. AYVAZYAN and TERABELIAN, submitted and caused to be submitted to Lender C a fake IRS Form 940 for 2019, which falsely represented that it had been prepared by F.A., a professional tax preparer.

Overt Act No. 27:   On or about May 5, 2020, defendant GRIGORYAN, together with other coconspirators, including defendants R. AYVAZYAN and TERABELIAN, caused Lender C to wire approximately $113,750 in proceeds from the G&A Diamonds PPP loan to the G&A Diamonds Bank 4 Account.

Overt Act No. 28:   On or about May 7, 2020, defendant PARONYAN, together with other coconspirators, including defendants R. AYVAZYAN and TERABELIAN, submitted and caused to be submitted to Lender B an application in the name of Redline Auto Collision Inc. ("Redline Auto Collision") seeking a PPP loan in the amount of $130,187, which application: (a) falsely represented that Redline Auto Collision had 12 employees, including employees for whom it had paid wages and payroll taxes, and average monthly payroll expenses of $52,075; and (b) falsely certified Redline Auto Collision would use the loan proceeds only for permissible business purposes.

Overt Act No. 29:   On or about May 11, 2020, defendant
PARONYAN, together with other coconspirators, including defendants R.
AYVAZYAN and TERABELIAN, caused Lender B to wire approximately
$130,187 in proceeds from the Redline Auto Collision PPP loan to the
Redline Auto Collision Bank 5 Account.

Overt Act No. 30:   On or about April 2, 2020, defendant
PARONYAN, together with other coconspirators, including defendants R.
AYVAZYAN and TERABELIAN, submitted and caused to be submitted to the
SBA an application in the name of Redline Auto Collision seeking an
EIDL loan in the amount of approximately $150,000, which application:
(a) falsely represented that Redline Auto Collision had 4 employees,
including employees for whom it had paid wages and payroll taxes; and
(b) falsely certified Redline Auto Collision would use the loan
proceeds for permissible business purposes.

Overt Act No. 31:   On or about June 8, 2020, defendant
PARONYAN, together with other coconspirators, including defendants R.
AYVAZYAN and TERABELIAN, caused the SBA to wire approximately
$149,900 in proceeds from the Redline Auto Collision EIDL loan to the
Redline Auto Collision Bank 5 account.

Overt Act No. 32:   On or about April 8, 2020, defendant
GRIGORYAN, together with other coconspirators, including defendants
R. AYVAZYAN and TERABELIAN, submitted and caused to be submitted to
the SBA an application in the name of G&A Diamonds seeking an EIDL
loan in the amount of approximately $150,000, which application:
(a) falsely represented that G&A Diamonds had 5 employees, including
employees for whom it had paid wages and payroll taxes; and (b)
falsely certified G&A Diamonds would use the loan proceeds for
permissible business purposes.

Overt Act No. 33:   On or about June 16, 2020, defendant GRIGORYAN, together with other coconspirators, including defendants R. AYVAZYAN and TERABELIAN, caused the SBA to wire approximately $149,900 to the G&A Diamonds Bank 4 Account.

Overt Act No. 34:   On or about June 17, 2020, defendant PARONYAN, together with other coconspirators, including defendants R. AYVAZYAN and TERABELIAN, caused approximately $150,000, comprised in substantial part of the proceeds from the Redline Auto Collision PPP and EIDL loans, to be wired from Redline Auto Collision Bank 5 Account to the Terabelian Bank 2 Account.

Overt Act No. 35:   On or about June 19, 2020, defendant GRIGORYAN, together with other coconspirators, including defendants R. AYVAZYAN and TERABELIAN, caused approximately $100,000, which in substantial part came from the proceeds from the G&A Diamonds PPP and EIDL loans, to be wired from G&A Diamonds Bank 4 Account to Terabelian Bank 2 Account.

Overt Act No. 36:   On or about June 22, 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, caused approximately $565,000, which in substantial part came from PPP and EIDL loan funds obtained from the SBA and financial institutions in the name of G&A Diamonds and Redline Auto Collision, to be wired from the Terabelian Bank 2 Account to Escrow Company 1 to be used as part of the $3,250,000 purchase price for Residential Property 1, which was purchased in the names of defendants R. AYVAZYAN and TERABELIAN.

**Voyage Limo PPP Loan**

Overt Act No. 37:   On or about May 18, 2020, defendant V. DADYAN, together with other coconspirators, submitted and caused to

be submitted to Lender B an application in the name of Voyage Limo seeking a PPP loan in the amount of $157,500, which application: (a) falsely represented that Voyage Limo had 11 employees, including employees for whom it had paid wages and payroll taxes, and average monthly payroll expenses of $63,000; and (b) falsely certified Voyage Limo would use the loan proceeds only for permissible business purposes.

Overt Act No. 38:  On or about May 18, 2020, defendant V. DADYAN, together with other coconspirators, submitted and caused to be submitted to Lender B false documents, including fake IRS Forms 940 and 941, in support of the Voyage Limo PPP loan application.

Overt Act No. 39:  On or about May 20, 2020, defendant V. DADYAN, together with other coconspirators, caused Lender B to wire approximately $157,500 in proceeds from the Voyage Limo PPP loan to the Voyage Limo Bank 3 Account.

Overt Act No. 40:  On or about July 3, 2020, defendant V. DADYAN, together with other coconspirators, caused approximately $155,000, which in substantial part came from the Voyage Limo PPP loan proceeds, to be wired from the Voyage Limo Bank 3 Account to Runyan Tax Bank 2 Account with the memo "Payroll."

Overt Act No. 41:  On or about July 23, 2020, defendants R. AYVAZYAN and TERABELIAN caused approximately $238,614, which in part came from the Voyage Limo PPP loan proceeds, to be transferred from the Runyan Tax Bank 2 Account to Escrow Company 2 to be used as part of the approximately $1,000,000 purchase price for Residential Property 2, which was purchased in the name of defendant R. AYVAZYAN's alias "Iuliia Zhadko."

**Timeline Transport EIDL Loan**

Overt Act No. 42:   On or about June 15, 2020, defendant R. AYVAZYAN, using the alias "Iuliia Zhadko," together with other coconspirators, submitted and caused to be submitted to the SBA an application in the name of Timeline Transport, Inc. ("Timeline Transport") seeking an EIDL loan in the amount of approximately $150,000, which application: (a) falsely represented that "Iuliia Zhadko" had owned Timeline Transport since 2016 and was the company's Chief Executive Officer; (b) falsely represented that Timeline Transport had 22 employees, including employees for whom it had paid wages and payroll taxes; and (c) falsely certified Timeline Transport would use the loan proceeds for permissible business purposes.

Overt Act No. 43:   On or about June 22, 2020, defendant R. AYVAZYAN, together with other coconspirators, caused the SBA to wire approximately $149,900 in proceeds from the Timeline Transport EIDL loan to the Timeline Transport Bank 1 Account.

Overt Act No. 44:   On or about June 24, 2020, defendant R. AYVAZYAN, together with other coconspirators, caused approximately $110,000, which in substantial part came from the Timeline Transport EIDL loan proceeds, to be wired from the Timeline Transport Bank 1 Account to Escrow Company 1 to be used as part of the $3,250,000 purchase price for Residential Property 1, which was purchased in the names of defendants R. AYVAZYAN and TERABELIAN.

**Redline Auto Mechanics PPP Loan**

Overt Act No. 45:   On or about June 25, 2020, defendant GRIGORYAN, using defendant GRIGORYAN's alias "Anton Kudiumov," together with other coconspirators, submitted and caused to be submitted to Lender B an application in the name of Redline Auto

21

Mechanics seeking a PPP loan in the amount of $276,650, which application: (a) falsely represented that Redline Auto Mechanics had 22 employees, including employees for whom it had paid wages and payroll taxes; and (b) falsely certified Redline Auto Mechanics would use the loan proceeds only for permissible business purposes.

Overt Act No. 46:   On or about June 25, 2020, defendant GRIGORYAN, together with other coconspirators, submitted and caused to be submitted to Lender B false documents in support of the Redline Auto Mechanics PPP loan application, including a fake California driver's license in the name of "Anton Kudiumov," and a fake IRS Form 940 for 2019, which falsely represented that it had been prepared by A.F., a professional tax preparer.

Overt Act No. 47:   On or about June 29, 2020, defendant GRIGORYAN, together with other coconspirators, caused Lender B to wire approximately $276,600 in proceeds from the Redline Auto Mechanics PPP loan to the Redline Auto Mechanics Bank 2 Account.

Overt Act No. 48:   On or about June 29, 2020, defendant GRIGORYAN, together with other coconspirators, caused a total of approximately $115,000, which was comprised in substantial part of the Redline Auto Mechanics PPP loan proceeds, to be transferred from Redline Auto Mechanics Bank 2 Account to the Kudiumov Bank 2 Account.

Overt Act No. 49:   On or about July 9, 2020, defendant GRIGORYAN, together with other coconspirators, caused approximately $93,200, which was comprised in substantial part from the Redline Auto Mechanics PPP loan proceeds, to be transferred from the Kudiumov Bank 2 Account to Escrow Company 3 to be used as part of the approximately $600,000 purchase price for Residential Property 3,

22

1  which was purchased in the name of defendant TERABELIAN's alias

2  "Viktoria Kauichko."

**Runyan Tax Service PPP Loan**

4  <u>Overt Act No. 50:</u>   On or about July 13, 2020, defendants

5  R. AYVAZYAN and TERABELIAN, using defendant TERABELIAN's alias

6  "Viktoria Kauichko," together with other coconspirators, submitted

7  and caused to be submitted to Lender A an application in the name of

8  Runyan Tax Service, Inc. ("Runyan Tax Service") seeking a PPP loan in

9  the amount of $276,653, which application: (a) falsely represented

10 that Runyan Tax Service had 22 employees, including employees for

11 whom it had paid wages and payroll taxes; and (b) falsely certified

12 Runyan Tax Service would use the loan proceeds only for permissible

13 business purposes.

14 <u>Overt Act No. 51:</u>   On or about July 13, 2020, defendants

15 R. AYVAZYAN and TERABELIAN, together with other coconspirators,

16 submitted and caused to be submitted to Lender A false documents in

17 support of the Runyan Tax Service PPP loan application, including a

18 fraudulent California driver's license purportedly belonging to

19 "Viktoria Kauichko," and a federal tax filing representing "Viktoria

20 Kauichko" as Runyan Tax Service's President, even though defendants

21 R. AYVAZYAN and TERABELIAN knew at the time that "Viktoria Kauichko"

22 was a fake identity.

23 <u>Overt Act No. 52:</u>   On or about July 21, 2020, defendants

24 R. AYVAZYAN and TERABELIAN, together with other coconspirators,

25 caused Lender A to wire approximately $276,653 in proceeds from the

26 Runyan Tax Service PPP loan to the Runyan Tax Bank 2 Account.

27 <u>Overt Act No. 53:</u>   On or about July 23, 2020, defendants

28 R. AYVAZYAN and TERABELIAN, together with other coconspirators,

23

caused approximately $238,614, which in substantial part came from the Runyan Tax Service PPP loan proceeds, to be transferred from the Runyan Tax Bank 2 Account to Escrow Company 2 to be used as part of the approximately $1,000,000 purchase price for Residential Property 2, which was purchased in the name of defendant R. AYVAZYAN's alias "Iuliia Zhadko."

**Mod Interiors PPP Loan**

<u>Overt Act No. 54:</u>  On or about July 21, 2020, defendants R. AYVAZYAN and TERABELIAN opened an account at Bank 7 in the name of Mod Interiors, Inc. ("Mod Interiors"), and listed N.T., who was a close relative, as the sole signatory.  N.T., however, was deceased, as he had died three days earlier.

<u>Overt Act No. 55:</u>  On or about July 23, 2020, defendants R. AYVAZYAN and TERABELIAN, using the name of N.T., together with other coconspirators, submitted and caused to be submitted to Lender F an application in the name of Mod Interiors seeking a PPP loan in the amount of $384,150, which application: (a) falsely represented that N.T. was Mod Interiors' President; (b) falsely represented that Mod Interiors had 36 employees, including employees for whom it had paid wages and payroll taxes; and (c) included, as a supporting record, a copy of N.T.'s California driver's license.

<u>Overt Act No. 56:</u>  On or about July 23, 2020, defendants R. AYVAZYAN and TERABELIAN submitted and caused to be submitted to Lender F false documents in support of the Mod Interiors PPP loan application, including fake IRS Forms 1120-S and 940, which falsely represented that they had been prepared by L.O., a professional tax preparer.

Overt Act No. 57:   On or about July 31, 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, caused Lender F to wire approximately $384,150 in proceeds from the Mod Interiors PPP loan to Mod Interiors Bank 7 Account.

Overt Act No. 58:   In or around August 2020, defendants R. AYVAZYAN and TERABELIAN, together with other coconspirators, caused a total of approximately $74,616, which in substantial part came from the Mod Interiors PPP loan proceeds, to be transferred from the Mod Interiors Bank 7 Account to the Runyan Tax Bank 2 Account.

**Turing Info Solutions PPP Loan**

Overt Act No. 59:   On or about August 3, 2020, defendant R. AYVAZYAN, using his alias "Iuliia Zhadko," together with other coconspirators, submitted and caused to be submitted to Lender F an application in the name of Turing Info Solutions Inc. ("Turing Info"), seeking a PPP loan in the amount of $384,150.

Overt Act No. 60:   On or about August 3, 2020, in connection with the Turing Info PPP loan application, defendant R. AYVAZYAN, together with other coconspirators, submitted and caused to be submitted to Lender F a fake California driver's license in the name of "Iuliia Zhadko" and fake IRS Forms 940 and 1120-S, which falsely represented that each had been prepared by J.R., a professional tax preparer.

Overt Act No. 61:   On or about August 25, 2020, defendant R. AYZAYAN, together with other coconspirators, caused Lender F to wire approximately $384,100 in proceeds from the Turing Info PPP loan to the Turing Info Bank 5 Account, which listed defendant R. AYVAZYAN's alias "Iuliia Zhadko" as the only signatory.

**A.D. PPP Loan**

Overt Act No. 62: On or about August 13, 2020, defendants A. AYVAZYAN and T. DADYAN, using the name of A.D., a real person, together with other coconspirators, submitted and caused to be submitted to Lender F an application in the name of "A.D. DBA Six Star Farms" for a PPP loan in the amount of $244,500, which application: (a) falsely represented that A.D. had 22 employees, including employees for whom A.D had paid wages and payroll taxes; and (b) falsely certified that the purported applicant, A.D., would use the loan proceeds only for permissible business purposes.

Overt Act No. 63: On or about August 13, 2020, defendants A. AYVAZYAN and T. DADYAN, together with other coconspirators, submitted and caused to be submitted to Lender F false documents in support of the A.D. DBA Six Star Farms PPP loan application, including a fake California driver's license purportedly belonging to A.D., and a fake Form 941, which falsely represented that it had been prepared by A.F., a professional tax preparer, and signed by A.D.

Overt Act No. 64: On or about August 17, 2020, defendants A. AYVAZYAN and T. DADYAN, together with other coconspirators, caused Lender F to wire approximately $244,500 in proceeds from the A.D. DBA Six Star Farms PPP loan to the A.D. Bank 8 Account.

COUNTS TWO THROUGH TWELVE

[18 U.S.C. §§ 1343, 2(a)]

[ALL DEFENDANTS]

34.   The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

A.   THE SCHEME TO DEFRAUD

35.   Beginning no later than in or around March 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, intended to devise, and participated in a scheme to defraud the SBA and financial institutions, and to obtain money and property by means of material false pretenses, representations, and promises, and the concealment of material facts.

36.   The fraudulent scheme operated and was carried out, in substance, as follows:

        a.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other co-schemers, used and caused to be used, stolen, fictitious, and synthetic identities of individuals to submit fraudulent applications for PPP and EIDL loans.

        b.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other co-schemers, used and caused to be used, stolen, fictitious, and synthetic business names to submit fraudulent applications for PPP and EIDL loans.

27

c. Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other co-schemers, made and caused to be made, false statements to the SBA and financial institutions in connection with the fraudulent applications for PPP and EIDL loans, including false representations regarding the number of employees to whom the companies had paid wages and false certifications that the loans would be used for permissible business purposes.

d. Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other co-schemers, electronically submitted, and caused to be submitted, fictitious documents to the SBA and financial institutions in support of the fraudulent PPP and EIDL loan applications, including false tax documents, payroll records, bank records, and identification documents.

e. Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other co-schemers, directed the other defendants and their co-schemers to deposit PPP and EIDL loan proceeds into bank accounts that defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, and their co-schemers controlled.

f. Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other co-schemers, laundered and used the fraudulently obtained PPP and EIDL loan proceeds for their own personal benefit and for the benefit of their co-schemers, including for expenses prohibited under the requirements of the PPP and EIDL programs, such as the purchase

of Residential Property 1, Residential Property 2, and Residential Property 3, gold coins, diamonds, jewelry, luxury watches, fine imported furnishings, designer handbags and clothing, cryptocurrency, and securities.

B.   USE OF THE WIRES

37.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with others known and unknown to the Grand Jury, aiding and abetting each other, transmitted and caused the transmission of the following items by means of wire and radio communication in interstate and foreign commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION | DEFENDANTS CHARGED |
|---|---|---|---|
| TWO | May 1, 2020 | Transfer of approximately $182,637 in PPP loan proceeds from Lender H, sent by means of an interstate wire, into S. Construction Bank 5 Account | R. AYVAZYAN; TERABELIAN; A. AYVAZYAN; T. DADYAN; GRIGORYAN; HAYRAPETYAN; PARONYAN |
| THREE | May 5, 2020 | Transfer of approximately $124,000 in PPP loan proceeds from Lender C, sent by means of an interstate wire, into Allstate Towing Bank 4 Account | R. AYVAZYAN; TERABELIAN; A. AYVAZYAN; T. DADYAN; GRIGORYAN; HAYRAPETYAN; PARONYAN |
| FOUR | May 8, 2020 | Transfer of approximately $130,000 in PPP loan proceeds from Lender B, sent by means of an interstate wire, into TQC Bank 3 Account | R. AYVAZYAN; TERABELIAN; A. AYVAZYAN; T. DADYAN; GRIGORYAN; HAYRAPETYAN; PARONYAN |

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION | DEFENDANTS CHARGED |
|---|---|---|---|
| FIVE | May 11, 2020 | Transfer of approximately $137,500 in PPP loan proceeds from Lender E, sent by means of an interstate wire, into Secureline Realty Bank 6 Account | R. AYVAZYAN; TERABELIAN; A. AYVAZYAN; T. DADYAN; GRIGORYAN; HAYRAPETYAN; PARONYAN |
| SIX | May 11, 2020 | Transfer of approximately $130,187 in PPP loan proceeds from Lender B, sent by means of an interstate wire, into Redline Auto Collision Bank 5 Account | R. AYVAZYAN; TERABELIAN; A. AYVAZYAN; T. DADYAN; GRIGORYAN; HAYRAPETYAN; PARONYAN |
| SEVEN | May 20, 2020 | Transfer of approximately $157,500 in PPP loan proceeds from Lender B, sent by means of an interstate wire, into Voyage Limo Bank 3 Account | ALL DEFENDANTS |
| EIGHT | June 16, 2020 | Transfer of approximately $149,900 in EIDL loan proceeds from the SBA, sent by means of an interstate wire, into G&A Diamonds Bank 4 Account | ALL DEFENDANTS |
| NINE | June 17, 2020 | Transfer of approximately $150,000 in EIDL loan proceeds from the Redline Auto Collision Bank 5 Account, sent by means of an interstate wire, to Terabelian Bank 2 Account | ALL DEFENDANTS |
| TEN | June 22, 2020 | Transfer of approximately $149,900 in EIDL loan proceeds from the SBA, sent by means of an interstate wire, into Timeline Transport Bank 1 Account | ALL DEFENDANTS |
| ELEVEN | July 31, 2020 | Transfer of approximately $384,150 in PPP loan proceeds from Lender F, sent by means of an interstate wire, into Mod Interiors Bank 7 Account | ALL DEFENDANTS |
| TWELVE | August 13, 2020 | Submission of application for PPP loan to Lender F in the name of A.D., sent by means of an interstate wire | ALL DEFENDANTS |

COUNTS THIRTEEN THROUGH TWENTY

[18 U.S.C. §§ 1344(2), 2(a), 2(b)]

[ALL DEFENDANTS]

38.   The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

A.   THE SCHEME TO DEFRAUD

39.   Beginning no later than in or around March 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to obtain moneys, funds, credits, assets, and other property owned by and in the custody and control of federally-insured financial institutions by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

40.   The fraudulent scheme operated and was carried out, in substance, as follows:

a.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other co-schemers, used and caused to be used, stolen, fictitious, and synthetic identities of individuals to submit fraudulent applications for PPP loans.

b.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other co-schemers, used and caused to be used, stolen,

31

1   fictitious, and synthetic business names to submit fraudulent

2   applications for PPP loans.

3           c.    Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

4   DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together

5   with other co-schemers, made and caused to be made, false statements

6   to the SBA and financial institutions in connection with the

7   fraudulent applications for PPP loans, including false

8   representations regarding the number of employees to whom the

9   companies had paid wages and false certifications that the loans

10  would be used for permissible business purposes.

11          d.    Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

12  DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together

13  with other co-schemers, electronically submitted, and caused to be

14  submitted, fictitious documents to the SBA and financial institutions

15  in support of the fraudulent PPP loan applications, including false

16  tax documents, payroll records, bank records, and identification

17  documents.

18          e.    Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

19  DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together

20  with other co-schemers, directed the other defendants and their co-

21  schemers to deposit PPP loan proceeds into bank accounts that

22  defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN,

23  GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, and their co-

24  schemers controlled.

25          f.    Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T.

26  DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together

27  with other co-schemers, laundered and used the fraudulently obtained

28  PPP loan proceeds for their own personal benefit and for the benefit

of their co-schemers, including for expenses prohibited under the requirements of the PPP programs, such as the purchase of Residential Property 1, Residential Property 2, and Residential Property 3, gold coins, diamonds, jewelry, luxury watches, fine imported furnishings, designer handbags and clothing, cryptocurrency, and securities.

B.   EXECUTIONS OF THE SCHEME

41.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with others known and unknown to the Grand Jury, aiding and abetting each other, committed and willfully caused others to commit the following acts, each of which constituted an execution of the fraudulent scheme:

| COUNT | DATE | ACT | DEFENDANTS CHARGED |
|---|---|---|---|
| THIRTEEN | April 18, 2020 | Submission of application for PPP loan to Lender H in the name of H. Construction | R. AYVAZYAN; TERABELIAN; A. AYVAZYAN; T. DADYAN; GRIGORYAN; HAYRAPETYAN; PARONYAN |
| FOURTEEN | April 30, 2020 | Submission of application for PPP loan to Lender B in the name of TQC | R. AYVAZYAN; TERABELIAN; A. AYVAZYAN; T. DADYAN; GRIGORYAN; HAYRAPETYAN; PARONYAN |
| FIFTEEN | May 2, 2020 | Submission of application for PPP loan to Lender C in the name of Allstate Towing | R. AYVAZYAN; TERABELIAN; A. AYVAZYAN; T. DADYAN; GRIGORYAN; HAYRAPETYAN; PARONYAN |

| COUNT | DATE | ACT | DEFENDANTS CHARGED |
|---|---|---|---|
| SIXTEEN | May 7, 2020 | Submission of application for PPP loan to Lender B in the name of Redline Auto Collision | R. AYVAZYAN; TERABELIAN; A. AYVAZYAN; T. DADYAN; GRIGORYAN; HAYRAPETYAN; PARONYAN |
| SEVENTEEN | May 9, 2020 | Submission of application for PPP loan to Lender E in the name of Secureline Realty | R. AYVAZYAN; TERABELIAN; A. AYVAZYAN; T. DADYAN; GRIGORYAN; HAYRAPETYAN; PARONYAN |
| EIGHTEEN | May 18, 2020 | Submission of application for PPP loan to Lender B in the name of Voyage Limo | ALL DEFENDANTS |
| NINETEEN | June 25, 2020 | Submission of application for PPP loan to Lender B in the name of Redline Auto Mechanics | ALL DEFENDANTS |
| TWENTY | July 13, 2020 | Submission of application for PPP loan to Lender A in the name of Runyan Tax Service | ALL DEFENDANTS |

34

COUNT TWENTY-ONE

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

[Defendant R. AYVAZYAN]

42.    The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

43.    Beginning no later than in or around March 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant R. AYVAZYAN knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant R. AYVAZYAN knew belonged to another person, namely, the name of M.Z., during and in relation to bank fraud, a felony violation of Title 18, United States Code, Section 1344(2), as charged in Count Fourteen of this First Superseding Indictment.

COUNT TWENTY-TWO

[18 U.S.C. §§ 1028A(a)(1), 2(a), 2(b)]

[Defendants R. AYVAZYAN and TERABELIAN]

44. The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

45. Beginning no later than in or around July 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN and TERABELIAN, each aiding and abetting the other, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification that defendants R. AYVAZYAN and TERABELIAN knew belonged to another person, namely, the name and California driver's license number of N.T., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Eleven of this First Superseding Indictment.

COUNT TWENTY-THREE

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

[Defendant GRIGORYAN]

46.   The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

47.   Beginning no later than in or around June 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant GRIGORYAN knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant GRIGORYAN knew belonged to another person, namely, the name of A.F., during and in relation to bank fraud, a felony violation of Title 18, United States Code, Section 1344(2), as charged in Count Nineteen of this First Superseding Indictment.

COUNT TWENTY-FOUR

[18 U.S.C. §§ 1028A(a)(1), 2(a), 2(b)]

[Defendants A. AYVAZYAN and T. DADYAN]

48.   The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

49.   Beginning no later than in or around June 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. AYVAZYAN and T. DADYAN, each aiding and abetting the other, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification that defendants A. AYVAZYAN and T. DADYAN knew belonged to another person, namely, the name and date of birth of A.D., during and in relation to wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twelve of this First Superseding Indictment.

COUNT TWENTY-FIVE

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

[Defendant HAYRAPETYAN]

50.   The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

51.   Beginning no later than in or around April 2020 and continuing until at least in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant HAYRAPETYAN knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant HAYRAPETYAN knew belonged to another person, namely, the name and social security number of M.H., during and in relation to bank fraud, a felony violation of Title 18, United States Code, Section 1344(2), as charged in Count Thirteen of this First Superseding Indictment.

COUNT TWENTY-SIX

[18 U.S.C. § 1956(h)]

[ALL DEFENDANTS]

52. The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

A.   THE OBJECTS OF THE CONSPIRACY

53. Beginning no later than in or around March 2020 and continuing until at least in or around October 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN conspired with one another and with others known and unknown, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

     a.   to knowingly conduct and attempt to conduct a financial transaction involving the proceeds of specified unlawful activity, that is, wire fraud and bank fraud, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

     b.   to knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, bank and wire fraud, in violation of Title 18, United States Code, Section 1957.

B.   THE MANNER AND MEANS OF THE CONSPIRACY

53.   The objects of the conspiracy were carried out, and to be carried out, as follows:

a.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other coconspirators, submitted and caused the submission of fraudulent PPP and EIDL loan applications, which caused the SBA and SBA-approved lenders, including lenders who were federally-insured financial institutions, to wire loan proceeds to bank accounts in the names of the entities used to obtain such loans.

b.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other conspirators, transferred and caused the transfer of the loan proceeds, including in financial transactions of $10,000 or greater, to secondary accounts under their control, including in the names of fictitious identities, and in order to conceal the true nature, location, source, ownership, and control of the funds.

c.   Defendants R. AYVAZYAN, TERABELIAN, A. AYVAZYAN, T. DADYAN, GRIGORYAN, HAYRAPETYAN, PARONYAN, and V. DADYAN, together with other conspirators, spent the PPP and EIDL fraud proceeds for their own personal benefit and for the benefit of their coconspirators, including for expenses prohibited under the requirements of the PPP and EIDL programs, such as the purchase of Residential Property 1, Residential Property 2, and Residential Property 3, gold coins, diamonds, jewelry, luxury watches, fine imported furnishings, designer handbags and clothing, cryptocurrency, and securities.

41

C.    <u>OVERT ACTS</u>

    54.  The Grand Jury re-alleges paragraph 32 of this First Superseding Indictment as a description of the overt acts, among others, committed and willfully caused to be committed in furtherance of the conspiracy and used to accomplish its objects, within the Central District of California.

COUNT TWENTY-SEVEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(b)]

[Defendant V. DADYAN]

55.  The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

CONCEALMENT MONEY LAUNDERING

56.  On or about July 3, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant V. DADYAN, and others known and unknown to the Grand Jury, knowingly conducted, and willfully caused others to conduct, a financial transaction involving the proceeds of specified unlawful activity, that is, conspiracy to commit bank and wire fraud, in violation of Title 18, United States Code, Section 1349, wire fraud in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344(2), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds, to wit: a wire transfer of $155,000, which in substantial part came from the Voyage Limo PPP loan proceeds, from the Voyage Limo Bank 3 Account to Runyan Tax Bank 2 Account with the memo "Payroll."

COUNTS TWENTY-EIGHT THROUGH THIRTY-TWO

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(b), 3147]

[Defendant R. AYVAZYAN]

57.  The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

A.  CONCEALMENT MONEY LAUNDERING

58.  Beginning no later than in or around December 2020 and continuing until at least in or around January 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant R. AYVAZYAN, and others known and unknown to the Grand Jury, knowingly conducted, and willfully caused others to conduct, the following financial transactions involving the proceeds of specified unlawful activity, that is, conspiracy to commit bank and wire fraud, in violation of Title 18, United States Code, Section 1349, wire fraud in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344(2), knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| TWENTY-EIGHT | December 21, 2020 | Transfer of $47,000 from Turing Info Bank 5 Account to Zhadko Bank 5 Account |
| TWENTY-NINE | December 22, 2020 | Transfer of $86,000 from Turing Info Bank 5 Account to Zhadko Bank 5 Account |
| THIRTY | December 23, 2020 | Transfer of $50,000 from Zhadko Bank 5 Account to Online Broker account ending -3630, which was opened on 12/21/2020 in the name of Iuliia Zhadko |
| THIRTY-ONE | December 24, 2020 | Transfer of $75,000 from Zhadko Bank 5 Account to Online Broker account ending -3630, which was opened on 12/21/2020 in the name of Iuliia Zhadko |

44

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| THIRTY-TWO | January 13, 2021 | Transfer of $22,000 from Turing Info Bank 5 Account to Digital Currency Exchange account ending -8efe, which was opened on 01/07/2021 in the name of Iuliia Zhadko |

B.   OFFENSE COMMITTED WHILE ON RELEASE

59.   During the commission of the felony offenses described above, defendant R. AYVAZYAN was released pursuant to Title 18, United States Code, Chapter 27, in the criminal case of United States v. Richard Ayvazyan et al., CR 20-579-SVW, in the United States District Court for the Central District of California.

COUNT THIRTY-THREE

[18 U.S.C. §§ 1344(2), 2(a), 2(b), 3147]

[Defendant T. DADYAN]

60.  The Grand Jury re-alleges paragraphs 1 through 29 of this First Superseding Indictment here.

A.  THE SCHEME TO DEFRAUD

61.  Beginning no later than in or around January 2021 and continuing until at least in or around February 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant T. DADYAN, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and attempted to execute a scheme to obtain moneys, funds, credits, assets, and other property owned by and in the custody and control of Bank 8, a federally-insured financial institution, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

62.  The fraudulent scheme operated and was carried out, in substance, in the following manner:

a.  Defendant T. DADYAN fraudulently opened an account at Bank 8 using victim A.D.'s name ("A.D. Bank 8 Account").

b.  Defendant T. DADYAN fraudulently obtained PPP and EIDL loan funds, including by using victim A.D.'s name, and deposited and transferred the funds in and to the A.D. Bank 8 Account.  As of January 22, 2021, the amount in A.D. Bank 8 Account totaled approximately $302,274.

c.  Upon receiving notice that the funds in the A.D. Bank 8 Account had been frozen, defendant T. DADYAN repeatedly made telephone calls to Bank 8 falsely representing that T. DADYAN was

46

A.D. and falsely representing that the frozen funds belonged to A.D., for the purpose of obtaining those funds.

B.   ATTEMPTED EXECUTION OF THE SCHEME

63.   On or about January 22, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant T. DADYAN, together with others known and unknown to the Grand Jury, aiding and abetting each other, committed and willfully caused others to commit an act which constituted an attempted execution of the fraudulent scheme, specifically, defendant T. DADYAN made a telephone call to Bank 8 and falsely represented that she was A.D., in an effort to obtain from Bank 8 funds in the A.D. Bank 8 Account, when defendant T. DADYAN knew that she was not an authorized signatory on the account, and that the funds in the account were comprised of fraudulently obtained PPP and EIDL loan proceeds, including PPP loan proceeds defendant T. DADYAN had fraudulently obtained using A.D.'s name.

C.   OFFENSE COMMITTED WHILE ON RELEASE

64.   During the commission of the felony offense described above, defendant T. DADYAN was released pursuant to Title 18, United States Code, Chapter 27, in the criminal case of United States v. Richard Ayvazyan et al., CR 20-579-SVW, in the United States District Court for the Central District of California.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

65.  Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this First Superseding Indictment.

66.  The defendant so convicted shall forfeit to the United States of America the following:

        a.  all right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense, including, but not limited to, certain real property referred to herein as Residential Property 1 located in the County of Los Angeles, State of California, APN 2176-029-031, certain real property referred to herein as Residential Property 2 located in the County of Los Angeles, State of California, APN 5663-036-033, and certain real property referred to herein as Residential Property 3 located in the County of Riverside, State of California, APN 694-331-008; and

        b.  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

67.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of

48

the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

68. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Two through Twelve of this First Superseding Indictment.

69. The defendant, if so convicted, shall forfeit to the United States of America the following:

a. all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses, including, but not limited to, certain real property referred to herein as Residential Property 1 located in the County of Los Angeles, State of California, APN 2176-029-031, certain real property referred to herein as Residential Property 2 located in the County of Los Angeles, State of California, APN 5663-036-033, and certain real property referred to herein as Residential Property 3 located in the County of Riverside, State of California, APN 694-331-008; and

b. to the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

70. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as

50

the result of any act or omission of the defendant, the property
described in the preceding paragraph or any portion thereof
(a) cannot be located upon the exercise of due diligence; (b) has
been transferred, sold to, or deposited with a third party; (c) has
been placed beyond the jurisdiction of the court; (d) has been
substantially diminished in value; or (e) has been commingled with
other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982]

71. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Thirteen through Twenty and Thirty-Three of this First Superseding Indictment.

72. Any defendant so convicted shall forfeit to the United States of America the following:

a. all right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense, including, but not limited to, certain real property referred to herein as Residential Property 1 located in the County of Los Angeles, State of California, APN 2176-029-031, certain real property referred to herein as Residential Property 2 located in the County of Los Angeles, State of California, APN 5663-036-033, and certain real property referred to herein as Residential Property 3 located in the County of Riverside, State of California, APN 694-331-008; and

b. to the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

73. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of

52

the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1    FORFEITURE ALLEGATION FOUR

2    [18 U.S.C. §§ 982 and 1028 and 28 U.S.C. § 2461(c)]

3    74.  Pursuant to Rule 32.2 of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 18,

6    United States Code, Sections 982 and 1028 and Title 28, United States

7    Code, Section 2461(c) in the event of the conviction of defendants

8    RICHARD AYVAZYAN, also known as ("aka") "Richard Avazian" and "Iuliia

9    Zhadko," MARIETTA TERABELIAN, aka "Marietta Abelian" and "Viktoria

10   Kauichko," ARTUR AYVAZYAN, aka "Arthur Ayvazyan," TAMARA DADYAN,

11   MANUK GRIGORYAN, aka "Mike Grigoryan" and "Anton Kudiumov," and ARMAN

12   HAYRAPETYAN, of the offenses set forth in Counts Twenty-One through

13   Twenty-Five of this First Superseding Indictment.

14   75.  The defendants, if so convicted, shall forfeit to the

15   United States of America the following:

16        a.  all right, title and interest in any and all property,

17   real or personal, constituting, or derived from, any proceeds

18   obtained, directly or indirectly, as a result of the offense,

19   including, but not limited to, certain real property referred to

20   herein as Residential Property 1 located in the County of Los

21   Angeles, State of California, APN 2176-029-031, certain real property

22   referred to herein as Residential Property 2 located in the County of

23   Los Angeles, State of California, APN 5663-036-033, and certain real

24   property referred to herein as Residential Property 3 located in the

25   County of Riverside, State of California, APN 694-331-008;

26        b.  any personal property used or intended to be used to

27   commit the offense; and

28

54

        c.   to the extent such property is not available for
forfeiture, a sum of money equal to the total value of the property
described in subparagraphs (a) and (b).

    76.  Pursuant to Title 21, United States Code, Section 853(p),
as incorporated by Title 18, United States Code, Sections 982(b) and
1028(g), the defendants, if so convicted, shall forfeit substitute
property, up to the total value of the property described in the
preceding paragraph if, as the result of any act or omission of the
defendant, the property described in the preceding paragraph, or any
portion thereof: (a) cannot be located upon the exercise of due
diligence; (b) has been transferred, sold to or deposited with a
third party; (c) has been placed beyond the jurisdiction of the
court; (d) has been substantially diminished in value; or (e) has
been commingled with other property that cannot be divided without
difficulty.

FORFEITURE ALLEGATION FIVE

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

77.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Twenty-Six through Thirty-Two of this First Superseding Indictment.

78.   The defendant so convicted shall forfeit to the United States of America the following:

a.   all right, title and interest in any and all property, real or personal, involved in such offense, and any property traceable to such property, including, but not limited to, certain real property referred to herein as Residential Property 1 located in the County of Los Angeles, State of California, APN 2176-029-031, certain real property referred to herein as Residential Property 2 located in the County of Los Angeles, State of California, APN 5663-036-033, and certain real property referred to herein as Residential Property 3 located in the County of Riverside, State of California, APN 694-331-008; and

b.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, up to the total value of

56

the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture,

//

//

1   conducted three or more separate transactions involving a total of

2   $100,000.00 or more in any twelve-month period.

3

4                                          A TRUE BILL

5                                          /S/

6                                          Foreperson

7   TRACY L. WILKISON
    Acting United States Attorney

8

9   *Brandon Fox*

10  BRANDON D. FOX
    Assistant United States Attorney

11  Chief, Criminal Division

12  RANEE A. KATZENSTEIN
    Assistant United States Attorney

13  Chief, Major Frauds Section

14  DANIEL A. KAHN
    Acting Chief, Fraud Section

15  Criminal Division
    United States Department of Justice

16

17  KRISTEN A. WILLIAMS
    Assistant United States Attorney

18  Deputy Chief, Major Frauds Section

19  SCOTT PAETTY
    Assistant United States Attorney

20  Major Frauds Section

21  BRIAN FAERSTEIN
    Assistant United States Attorney

22  Environmental and Community Safety
    Crimes Section

23

24  CHRISTOPHER FENTON
    Trial Attorney, Fraud Section

25  Criminal Division
    United States Department of Justice

26

27

28

                              58