**KUTAK ROCK LLP**
David A. Warrington
David.warrington@kutakrock.com
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219
Telephone: (202) 828-2438
Facsimile: (202) 828-2400

*Attorney for Defendant Imaad Shah Zuberi*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

IMAAD SHAH ZUBERI,

Defendant.

Case No.: 2:19-cr-00642-VAP
No.: 2:20-cr-00155-VAP

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RELEASE PENDING APPEAL**

The Honorable Virginia A. Phillips

[[*Proposed] Order; and Ex Parte Application to Be Heard on Shortened Time filed concurrently herewith*]

Current Date: June 7, 2021
Requested Date: May 26, 2021
Time: 9:00 a.m.
Ctrm: 8A

**NOTICE OF MOTION AND MOTION FOR RELEASE PENDING APPEAL**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on June 7, 2021 at 9:00 a.m. in Courtroom 8A of this Court at 350 West 1st Street, Los Angeles, CA 90012, Defendant Imaad Shah Zuberi will and hereby moves this Court to continue his continued release pending appeal under 18 U.S.C. § 3143(b)(1) and Federal Rule of Criminal Procedure 46(c).

Zuberi moves for this continued release on the grounds that release pending appeal is warranted where (1) the defendant does not pose a flight or safety risk, and (2) the appeal is not for purpose of delay, but instead raises a substantial question of law or fact that, if resolved in defendant's favor, is likely to result in reversal, a new trial, a non-prison sentence, or a reduced prison term shorter than the expected appeal. *See* 18 U.S.C. § 3143(b)(1). Zuberi satisfies these requirements.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities; any reply Defendant may make; the pleadings and records in this action; and any other such matters, evidence, and arguments as may be presented at or prior to the hearing.

Dated: May 10, 2021

Respectfully submitted,

**KUTAK ROCK LLP**

By: *David A. Warrington*
David A. Warrington

*Counsel for Defendant*
*Imaad Shah Zuberi*

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** .......... 1

**DISCUSSION** .......... 3

I. Zuberi is neither a flight nor safety risk .......... 3

II. Zuberi's appeal will raise substantial questions that, if resolved in his favor, would likely result in reversal, a new trial, a non-prison sentence, or a term of imprisonment shorter than the appeal .......... 3

A. The government violated *Brady* by suppressing information material to sentencing and to waiver of trial and guilty plea .......... 4

B. Zuberi's counsel had an undisclosed actual conflict of interest .......... 9

C. Zuberi's plea agreement should be set aside based on the government's fraudulent inducement and its contradictory argument regarding deletion of emails .......... 13

1. The government induced Zuberi's plea by misrepresentation .......... 14

2. The government's obstruction position was inconsistent with facts the government conceded .......... 21

D. Under Zuberi's plea agreement for the remaining SDNY obstruction count, the agreed advisory guidelines range will likely result in no imprisonment .......... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brady v. Maryland*,
373 U.S. 83 (1963)........*passim*

*Brady v. United States*,
397 U.S. 742 (1970)........11, 12, 15

*Cuyler v. Sullivan*,
446 U.S. 335 (1980)........9, 11, 13

*Dillon v. United States*,
307 F.2d 445 (9th Cir. 1962)........19

*Gall v. United States*,
552 U.S. 38 (2007)........20

*Holloway v. Arkansas*,
435 U.S. 475 (1978)........10, 11, 13

*Mabry v. Johnson*,
467 U.S. 504 (1984)........14, 15, 20

*Mickens v. Taylor*,
535 U.S. 162 (2002)........9, 10, 11, 13

*Old Chief v. United States*,
519 U.S. 172 (1997)........23

*Puckett v. United States*,
556 U.S. 129 (2009)........*passim*

*Rosales-Mireles v. United States*,
138 S. Ct. 1897 (2018)........21

*Sanchez v. United States*,
50 F.3d 1448 (9th Cir. 1995)........8, 9, 1

*Santobello v. New York*,
404 U.S. 257 (1971)........14, 15, 20

*United States v. Bautista*,
989 F.3d 698 (9th Cir. 2021) .......... 20

*United States v. Blueford*,
312 F.3d 962 (9th Cir. 2002) .......... 21

*United States v. Bryant*,
398 Fed. App'x. 561 (11th Cir. 2010) .......... 19

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020) .......... 7, 8, 10

*United States v. Camarillo-Tello*,
236 F.3d 1024 (9th Cir. 2001) .......... 20

*United States v. Davis*,
854 F.3d 601 (9th Cir. 2017) .......... 24

*United States v. De La Fuente*,
8 F.3d 1333 (9th Cir. 1993) .......... 17, 21

*United States v. Franco-Lopez*,
312 F.3d 984 (9th Cir. 2002) .......... 16, 17, 19, 20

*United States v. Garcia*,
340 F.3d 1013 (9th Cir. 2003) .......... 4

*United States v. Handy*,
761 F.2d 1279 (9th Cir. 1985) .......... 4

*United States v. Hopper*,
27 F.3d 378 (9th Cir. 1994) .......... 18, 19

*United States v. Olson*,
988 F.3d 1158 (9th Cir. 2021) .......... 12

*United States v. Quinn*,
537 F. Supp. 2d 99 (D.D.C. 2008) .......... 4, 7, 8

*United States v. Rodgers*,
278 F.3d 599 (6th Cir. 2002) .......... 18

*United States v. Ruiz-Alvarez*,
211 F.3d 1181 (9th Cir. 2000) .......... 24

*United States v. Sung*,
740 F. App'x 878 (9th Cir. 2018) .......... 4, 7

*United States v. Walter-Eze*,
869 F.3d 891 (9th Cir. 2017) .......... 9, 10, 11

**Statutes**

18 U.S.C. § 3142(b)(1) .......... 3

18 U.S.C. § 3143(b)(1) .......... 1, 3, 4

18 U.S.C. § 3143(b)(1)(B) .......... 3, 4

18 U.S.C. § 3553(a) .......... 3, 4, 11

18 U.S.C. § 3553(a)(6) .......... 4, 7

U.S.S.G. § 3C1.1 .......... 16, 18

U.S.S.G. § 3E1.1 .......... *passim*

U.S.S.G. § 3E1.1(a) .......... 19

U.S.S.G. § 3E1.1 App. Note 4 .......... 2, 16, 19

U.S.S.G. § 5C1.1(d) .......... 24

U.S.S.G. § 5C1.1(e) .......... 24

**Other Authorities**

Fed. R. Crim. P. 11(d)(2)(B) .......... 12, 13

Fed. R. Crim. P. 32(e) .......... 16

Fed. R. Crim. P. 32(f) .......... 16

Fed. R. Evid. 201(b)(2) .......... 6

Fed. R. Evid. 201(c)(2) .......... 6

Fed. R. Evid. 201(d) .......... 6

Lebanese-Nigerian Billionaire and Two Associates Resolve Federal Probe into Alleged Violations of Campaign Finance Laws, U.S. Attorney's Office for Cent. Dist. of Cal. (March 31, 2021), https://bit.ly/3gjFOYN ....................5, 6. 7, 12

Political Donor Sentenced to 12 Years in Prison for Lobbying and Campaign Contribution Crimes, Tax Evasion, Obstruction of Justice, U.S. Attorney's Office for Cent. Dist. of Cal. (Feb. 18, 2021), https://bit.ly/3vOVtnk ....................7

Prisons, *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic* (March 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf ....................25

U.S. Const. amend. VI ....................11, 12

United States Courts, Federal Court Management Statistics—Summary, September 2020, https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-september-2020 ....................24

*United States v. Arsan*, Deferred Pros. Agm., https://bit.ly/3ao5HCX ....................5, 6, 9, 10

*United States v. Baaklini*, Deferred Pros. Agm., https://www.justice.gov/usao-cdca/press-release/file/1382086/download....................5, 6

*United States v. Chagoury*, Deferred Pros. Agm., https://bit.ly/32p3kO....................5, 6, 12

*United States v. LaHood*, Non-Prosecution Agm., https://bit.ly/3o0oBp0 ....................6

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Release pending appeal is warranted where (1) the defendant does not pose a flight or safety risk, and (2) the appeal is not for purpose of delay, but instead raises a substantial question of law or fact that, if resolved in defendant's favor, is likely to result in reversal, a new trial, a non-prison sentence, or a reduced prison term shorter than the expected appeal. *See* § 3143(b)(1).

Zuberi satisfies these requirements. He poses no flight or safety risk, and his appeal will raise at least three substantial questions under § 3143(b)(1).

*First*, the government violated *Brady* by withholding information material to punishment: the prosecution did not disclose that at the same time it was urging a twelve-year sentence for Zuberi, it was granting deferred- and non-prosecution agreements to others charged with strikingly similar offenses. That information directly rebutted the prosecutor's sentencing argument against Zuberi, and was material to preventing unwarranted sentencing disparities. It was also material to Zuberi's decision to waive trial and plead guilty: had Zuberi known the same U.S. Attorney's Office was granting non-prosecution dispositions to foreign nationals charged with the same FECA offense, he would not have pled guilty with an agreed 12-year guideline range.

*Second,* Zuberi's counsel had an undisclosed conflict of interest: one of his lead attorneys also represented one of the defendants who received deferred prosecution. Despite knowing of the 12-year disparity between dispositions offered by the same USAO, and that the deferred prosecution agreements directly rebutted the prosecution's argument here, that attorney never said a word to Zuberi, and never raised those arguments on Zuberi's behalf.

*Third*, the government induced Zuberi's plea agreement by misrepresen-

tation—promising to recommend credit for acceptance of responsibility, but instead only using that promise as leverage to try to force concession of greater offense conduct than Zuberi pled to, without granting such credit. Immediately after the plea, the government revealed its Catch-22: demanding that Zuberi either stipulate to obstruction of justice (which under the government's interpretation would preclude credit for acceptance of responsibility), or else be punished for falsely or frivolously denying obstruction—which would result in losing credit for acceptance of responsibility. After being called out, the government claimed it intended to recommend credit only for "extraordinary" acceptance under U.S.S.G. § 3E1.1 App. Note 4. But that requirement is not spelled out anywhere in the government-drafted agreement, which states instead it does not include any promises or understandings not contained in the written agreement.

The government's reason for denying credit was also erroneous—it denied acceptance credit based on pre-plea obstructive conduct that it knew of when it entered the plea agreement, in violation of precedent holding that such known pre-charge, pre-plea conduct does not preclude credit where the defendant took responsibility for it in the plea and did not commit any such misconduct thereafter. An additional basis for the government's refusal was its claim that Zuberi obstructed justice by deleting potentially relevant emails. But on information and belief, the government conceded in sealed proceedings that Zuberi was directed to delete emails by an agency of the United States—a concession squarely at odds with its narrative that Zuberi obstructed justice.[1]

Each of these issues independently warrants setting aside Zuberi's plea

[1] Although one of Zuberi's counsel has received a security clearance, counsel has not yet been given access to the sealed record as of the filing of this motion. A supplement filing may be necessary after reviewing those materials.

agreement for the three counts charged in this District. The remaining obstruction count, transferred from the Southern District of New York, is governed by a separate plea agreement containing an agreed guidelines level of 12 (Zone C), which under the advisory Guidelines allows 5-8 months in jail and 5-8 months' intermittent or home confinement. Considering all of the circumstances and the § 3553(a) factors, including the need to avoid unwarranted disparities, an appropriate sentence on that count would be probation or a short term of home confinement. Continued release on bail is thus appropriate under § 3142(b)(1).

## DISCUSSION

### I. Zuberi is neither a flight nor safety risk

Zuberi poses no flight or safety risk: his current release conditions are sufficient to assure his surrender. The government necessarily conceded as much by proposing voluntary surrender on those conditions.[2] Though the government recently voiced purported flight risk concerns,[3] it again proposed only modifications to release conditions, while continuing to consent to self-surrender.[4] This Court's permitting Zuberi to remain on release tacitly found his modified conditions sufficient to assure reporting under § 3143(b)(1).[5]

### II. Zuberi's appeal will raise substantial questions that, if resolved in his favor, would likely result in reversal, a new trial, a non-prison sentence, or a term of imprisonment shorter than the appeal

To obtain release pending appeal, a defendant must show his appeal "raises a substantial question ... likely to result in" reversal, a new trial, a non-

---

[2] *See* Dkt 350-1 at 2; Dkt. 359 at 6. Unless otherwise noted, all docket references are to the docket in No. 19-00642-VAP.

[3] *See* Dkt. 351 at 8-9 (quoting Dkt. 328). The government's claim was based in part on a claim that recent property sales left Zuberi with $7.5 million in cash, 5/3/2021 Tr. 13, a figure off by a factor of ten, Dkt. 367 at 1, 3-5.

[4] *See* Dkt. 365, at 2, 7; *see also* Dkt. 359 at 6.

[5] *See* Dkt. 359 at 6.

prison sentence, or a prison term shorter than the appeal. § 3143(b)(1)(B).

A "substantial question" is one that is "fairly debatable" or "fairly doubtful" —"of more substance than would be necessary to a finding that it was not frivolous." *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). "The question may be new and novel. It may present unique facts not plainly covered by the controlling precedents....The application of well-settled principles to the facts of the ... case may raise issues that are fairly debatable." *Id.*

The phrase "'likely to result in reversal [or] an order for a new trial'" does *not* require showing a likelihood of success on appeal. *Id.* at 1280-81. Instead, the question must be one that, "*if decided in the defendant's favor*, would likely result in reversal or could satisfy one of the other conditions." *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003) (emphasis added). Nor does this Court need to find likely error: release pending appeal is proper even if the Court "would affirm on the merits." *Handy*, 761 F.2d at 1281.

Zuberi's appeal will raise at least three fairly debatable questions that, if decided in his favor, would likely result in qualifying relief under § 3143(b)(1).

### A. The government violated *Brady* by suppressing information material to sentencing and to waiver of trial and guilty plea

Due Process requires the government to disclose, irrespective of request, any evidence "both favorable to the accused and 'material either to guilt or to punishment.'" *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Here, that includes information directly rebutting the government's sentencing arguments, as well as information that could be used to support an argument regarding unwarranted sentencing disparity under 18 U.S.C. § 3553(a)(6).[6]

---

[6] *See* Dkt. 5 ¶ 23 (expressly leaving § 3553(a) factors, including (a)(6), open for litigation); *United States v. Sung*, 740 F. App'x 878, 880 (9th Cir. 2018) (vacating sentence for failure to consider disparity); *United States v. Quinn*, 537 F. Supp. 2d 99, 117-18 (D.D.C. 2008) (government violated *Brady*

In its final sentencing brief, the government told this Court that a 10-to-12.5 year sentence was necessary because:

> Clandestine foreign efforts to subvert U.S. democratic processes in recent years have caused a significant portion of the body politic to lose faith in our public institutions.... A sentence within the guideline range is necessary to deter other would-be FARA and FECA offenders from compromising our elections and institutions with foreign cash.[7]

What the government did not tell Zuberi or the Court was that two weeks after it signed Zuberi's plea agreement, and two days before docketing it, the same U.S. Attorney's Office entered, under seal, a deferred-prosecution agreement with another "would-be FECA offender" charged with "compromising our elections and institutions with foreign cash."[8] The day after submitting the above argument to this Court, the prosecutors granted deferred prosecution to a second "FECA offender" charged with the same conduct.[9] Two weeks after Zuberi's sentencing, they granted deferred prosecution to a third co-schemer.[10]

---

by not disclosing contemplated no-incarceration plea deal with co-conspirator).

[7] Dkt. 233 at 2 (Nov. 9, 2020); *accord id.* at 7.

[8] *See Lebanese-Nigerian Billionaire and Two Associates Resolve Federal Probe into Alleged Violations of Campaign Finance Laws*, U.S. Attorney's Office for Cent. Dist. of Cal. (March 31, 2021), https://bit.ly/3gjFOYN (announcing Oct. 20, 2019 deferred-prosecution agreement with Gilbert Chagoury); *United States v. Chagoury*, Deferred Pros. Agm. at 2, https://bit.ly/32p3kO.

[9] *See* USAO Press Release, note 8, *supra* (announcing Nov. 10, 2020 deferred-prosecution agreement with Joseph Arsan); *United States v. Arsan*, Deferred Pros. Agm., https://bit.ly/3ao5HCX.

[10] *See* USAO Press Release, note 8, *supra* (announcing March 1, 2021 deferred-prosecution agreement with Joseph Baaklini); *United States v. Baaklini*, Deferred Pros. Agm., https://www.justice.gov/usao-cdca/press-release/file/1382086/download.

Zuberi respectfully requests that the Court take judicial notice of these deferred- and non-prosecution agreements, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned":

Like Zuberi, these individuals were charged by the Public Corruption and Civil Rights Section of this U.S. Attorney's Office with "compromising our elections and institutions with foreign cash," in violation of FECA. Chagoury, a foreign national, was charged with making illegal foreign contributions, including conduit contributions, in a six-figure amount to U.S. presidential and congressional candidates.[11] Arsan and Baaklini, foreign nationals, were charged with aiding and abetting those contributions by sending reimbursements to the conduit contributors.[12] Arsan's agreement also resolved a multi-year criminal tax investigation.[13] In a separate transaction, Baaklini wrote a $50,000 personal check to then-U.S. Secretary of Transportation Ray LaHood, who accepted the money understanding it came from Chagoury.[14]

Unlike Zuberi, for whom the government urged more than a decade in prison, these "would-be FECA offenders" received secret agreements freeing them from prosecution, *even though they paid $50,000 directly to a sitting Cabinet member to use for "home repairs."*[15] The agreements were announced only

---

the agreements themselves, which were publicly disseminated by the U.S. Attorney's Office itself through its own press release. *See* Fed. R. Evid. 201(b)(2). "The [C]ourt may take judicial notice at any stage of the proceeding," Fed. R. Evid. 201(d), including on appeal, and "must take judicial notice if a party requests it and the [C]ourt is supplied with the necessary information." Fed. R. Evid. 201(c)(2); *see In re Icenhauer*, 755 F.3d 1130, 1142 (9th Cir. 2014).

[11] USAO Press Release, note 8, *supra*; Chagoury Deferred Pros. Agm. Ex. B (Statement of Facts), note 8, *supra*.

[12] *See* Arsan Def. Pros. Agm. Ex. B (Statement of Facts), note 9, *supra*; Baaklini Def. Pros. Agm. Statement of Facts, note 10, *supra*.

[13] *See* USAO Press Release, note 8, *supra*; *compare* Arsan Def. Pros. Agm. ¶ 2, note 9, *supra* (resolving investigation of "Arsan's tax violations in tax years 2012-2016"), *with* Zuberi Plea Agm ¶ 3 (resolving IRS closing agreements for tax years 2012-2015).

[14] *See* USAO Press Release, note 8, *supra*, at 2; *United States v. LaHood*, Non-Prosecution Agm. Ex. A (Statement of Facts), https://bit.ly/3o0oBp0 .

[15] LaHood Agm. Ex. A, Statement of Facts, note 14, *supra*.

after Zuberi's sentencing. Secretary LaHood, accused of failing to disclose the payment on ethics disclosure forms, falsely denying the payment to the FBI, then characterizing it as a "loan" whose terms he could not remember and which he did not repay, was not prosecuted.[16]

Furthermore, Chagoury was given his secret deal in part because of his "unique assistance to the U.S. government."[17] It is undisputed, and well-known to the prosecution, that Zuberi provided extensive assistance to the United States government for almost two decades. He was entitled to know at least the broad contours, and to tell the court, how his assistance stacked up against Chagoury's.[18]

To be sure, individual facts may differ, and prosecutors have discretion to reach different dispositions in different cases. But prosecutors are not free to withhold such information when it is favorable to the defense and bears directly on guilt or punishment. Its suppression is a patent *Brady* violation.[19]

The government cannot credibly claim it did not know this information. These cases were prosecuted by the same Public Corruption and Civil Rights Section that prosecuted Zuberi.[20] There can be no serious doubt that AUSA O'Brien, the Deputy Chief of that unit, knew of these agreements, yet willfully

---

[16] *See id.*

[17] USAO Press Release, note 8, *supra*.

[18] *See* 18 U.S.C. § 3553(a)(6); *Kwon Woo Sung*, 740 F. App'x 878, 880 (9th Cir. 2018) (vacating defendant's sentence for, among other reasons, district court's failure to consider the need to avoid unwarranted sentence disparities).

[19] *See Quinn*, 537 F. Supp. 2d at 117-18; *see also United States v. Bundy*, 968 F.3d 1019, 1032-37, 1038-45 (9th Cir. 2020) (government's withholding evidence rebutting prosecution's arguments was flagrant *Brady* violation).

[20] *Compare* USAO Press Release, note 8, *supra*, *with Political Donor Sentenced to 12 Years in Prison for Lobbying and Campaign Contribution Crimes, Tax Evasion, Obstruction of Justice*, U.S. Attorney's Office for Cent. Dist. of Cal. (Feb. 18, 2021), https://bit.ly/3vOVtnk.

kept them from the defense.[21] The reason is obvious: they destroyed the argument that only a decade-plus in prison for Zuberi could deter such individuals from "compromising our elections and institutions with foreign cash."[22]

This information was also material to Zuberi's waiver of trial and guilty plea. "[A] defendant can argue that his guilty plea was not voluntary because it was made in the absence of withheld *Brady* material." *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995). "[T]he issue in a case involving a guilty plea is whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial." *Id.* The test "is an objective one that centers on 'the likely persuasiveness of the withheld information.'" *Id.* Here, objectively, it is unlikely that if Zuberi had known his prosecutors were giving deferred prosecution to foreign nationals accused of the same foreign-contribution offenses he faced (including, for Arsan, a related five-year tax investigation), he would have pled guilty under guidelines factors that could yield up to 15 years in prison. At the very least, that likelihood is fairly debatable or fairly doubtful.

A decision to waive trial and plead guilty is not intelligent and voluntary if *Brady* information is withheld. *Sanchez*, 50 F.3d at 1453. "Moreover, if a defendant may not raise a *Brady* claim after a guilty plea, prosecutors may be tempted"—as the prosecutor was here—"to deliberately withhold [favorable material] information as part of an attempt to elicit guilty pleas." *Id.* Thus, a *Brady* claim is a basis for challenging the voluntariness of the guilty plea, under

---

[21] *Compare Bundy*, 968 F.3d at 1038-40.

[22] *See supra* at 5; *compare Bundy*, 968 F.3d at 1032-37. Notably, the USAO's description of its post-plea Brady obligations acknowledged only the duty to turn over "exculpatory evidence," not evidence material to punishment. Dkt. 54, at 10. This is the argument rejected in *Quinn*, 537 F. Sup. 2d at 117 (holding that a co-conspirator's no-jail plea deal was *Brady* information).

both *Sanchez* and Zuberi's plea agreement (*see* Dkt. 5 ¶ 27).

Zuberi's *Brady* claim is a "fairly debatable" question that if resolved in his favor would likely result in withdrawal of his plea and a new trial.

**B. Zuberi's counsel had an undisclosed actual conflict of interest**

Despite the prosecutor's concealment, one person on the defense knew of at least one of these deferred prosecution agreements: Zuberi's lawyer, Evan Davis. Davis knew because he was also Joseph Arsan's lawyer.[23] Arsan's agreement was signed November 10, 2020—the day after AUSA O'Brien urged ten to twelve years for Zuberi, to "send a message" to those such as Arsan. (*See* Dkt. 233, at 2, 7.) Despite knowing that Arsan's agreement squarely contradicted that argument, Davis *never said a word to his client, Zuberi, or this Court*. That is a stark, undeniable conflict of interest.

"[A] criminal defendant has the right to be represented by counsel whose loyalties are undivided." *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). "Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises." *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980). Where counsel does not alert his client or the Court, the client "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" to obtain relief. *Id.* at 348; *Lockhart*, 250 F.3d at 1230.

"A showing of 'adverse effect' is not the same as showing prejudice." *United States v. Walter-Eze*, 869 F.3d 891, 901 (9th Cir. 2017). Indeed, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Thus, "a defendant need not 'show actual harm,' but just 'ac-

[23] *See* Arsan Def. Pros. Agm., note 9, *supra*, at 14.

tual conflict,'" *Walter-Eze*, 869 F.3d at 901, that is, conflict that "adversely affected his counsel's performance." *Mickens*, 535 U.S. at 174. The central question is what the lawyer was "compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations [or] in the sentencing process." *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978). The right to counsel is violated when the "advocate's conflicting obligations have effectively sealed his lips on crucial matters." *Id.*; *accord Mickens*, 535 U.S. at 168.

Here, Davis's conflicting duty to Arsan "sealed his lips" about the deferred-prosecution agreements.[24] Because the USAO kept those agreements secret, Davis could not reveal them in Zuberi's case, out of duty to Arsan.[25] That failure adversely affected Davis's advocacy on behalf of Zuberi: it kept him from directly rebutting AUSA O'Brien's argument that a decade in prison was necessary to deter "would-be FECA offenders" like Arsan from "corrupting the fabric of our democracy in exchange for foreign cash." Dkt. 233 at 7.[26] It also "sealed his lips" from arguing the vast and unwarranted disparity between 12 years for Zuberi and no prosecution for Arsan—an issue expressly reserved (Dkt. 5 ¶ 23) and vigorously litigated in this case (*see* Dkt. 233 at 15-18; Dkt.

---

[24] At a minimum, Davis knew of Arsan's agreement—he appears on it. *See* Arsan Def. Pros. Agm., note 9, *supra*, at 14. In fact, he likely knew of all three. Arsan participated personally in reimbursing $150,000 of the $180,000 in illegal foreign contributions at issue in all three deferred prosecutions. *See* Arsan Plea Agm. Ex. B (Statement of Facts); USAO Press Release, note 8, *supra*. Because those cases were investigated and charged together for the same scheme, Davis likely knew of all three deferred-prosecution agreements (if not from the USAO, then from his client Arsan).

[25] Zuberi did not learn of Arsan's case, or Davis's representation of Arsan, until after the government's March 31, 2021 press announcement.

[26] *Cf. Bundy*, 968 F.3d at 1036, 1039-40 (noting importance of withheld evidence that would have directly rebutted government arguments).

255 at 39-46) with no mention of this USAO's lenience to the other contemporaneously charged FECA offenders.

With that adverse effect on Davis's advocacy established, the Court does not inquire further into prejudice. *Mickens*, 535 U.S. at 166; *Sullivan*, 446 U.S. at 349-50; *Walter-Eze*, 869 F.3d at 900. The question is not whether Davis's impaired advocacy made a difference in Zuberi's sentence. Because Davis *did not even make the arguments*, prejudice is presumed.

Davis's conflict infected Zuberi's plea as well as his sentencing. To be knowing, intelligent, and voluntary, a guilty plea must be counseled. *Brady v. United States*, 397 U.S. 742, 749 & n.6 (1970). An attorney whose conflict adversely affects his advocacy does not satisfy the Sixth Amendment. *E.g., Holloway*, 435 U.S. at 490. Such an actual conflict is a basis for challenging the plea, under both the law, *e.g.*, *id.*, and Zuberi's plea agreement (Dkt. 5 ¶ 27).

Here, Davis represented Zuberi on his plea agreement (Dkt. 5 at 20) and at his plea hearing (Dkt. 36 at 2-3). Davis certified he had "carefully and thoroughly discussed every part of th[e] agreement" with Zuberi, had fully "advised [Zuberi] of his rights, ... [and] of the sentencing factors set forth in 18 U.S.C. § 3553(a)," and that Zuberi's "decision to enter into this agreement is an informed and voluntary one." Dkt. 5 at 21-22. The agreement highlighted the importance of the § 3553(a) factors, *id.* ¶ 19, and reserved Zuberi's right to argue those factors, including deterrence and unwarranted disparity, *id.* ¶ 23.

Yet Davis never disclosed to Zuberi, and never argued to the Court, that the Public Corruption Section was granting deferred-prosecution agreements to foreign nationals charged with six-figure conduit-contribution offenses, while insisting on 10 to 12.5 years for Zuberi to "send a message" to such offenders. Nor did Davis reveal that one of those agreements resolved his other client's tax investigation for the same years for which Zuberi faced investigation.

As noted, it is overwhelmingly likely that Davis knew not only of Arsan's agreement, but of Chagoury's as well. Chagoury's agreement was entered October 20, 2019[27]—two weeks after Davis and Zuberi signed Zuberi's agreement (Dkt. 5 at 20-21), and two days before the government filed it with the Court (*id.* at 1). Yet Davis's "full[] and thorough[]" discussion with Zuberi did not include the fact that while Zuberi's agreement called for a guidelines level of 26 (63-78 months) under FECA, and an overall level of up to 34 (151-188 months), Chagoury was receiving deferred prosecution. Had Davis so informed him, Zuberi would not have agreed to his plea deal.[28]

Even if, *arguendo*, Davis did not know of Chagoury's deferred-prosecution agreement in November 2019 when Zuberi changed his plea (on Davis's advice), he almost certainly knew of it by the time Arsan entered his deferred prosecution agreement on November 10, 2020.[29] At that time, Davis still represented Zuberi in his upcoming sentencing proceedings, and Zuberi could still have moved to withdraw the plea based on a fair and just reason. *See* Fed. R.

---

[27] Chagoury Plea Agm. at 18, note 8, *supra*.

[28] The Ninth Circuit's recent decision in *United States v. Olson*, 988 F.3d 1158 (9th Cir. 2021), holding that the Sixth Amendment right to counsel does not attach to purely pre-indictment plea bargaining, does not bar Zuberi's conflict-of-interest challenge here. Whether or not the Sixth Amendment right to counsel attaches to pre-charge plea bargaining, it unquestionably attaches with the filing of charges, *see id.* at 1162 (quoting *Kirby v. Illinois*, 406 U.S. 682, 688 (1972)), and applies to waiver of rights at a plea hearing, *see Brady*, 397 U.S. at 748-49 & n.6. Here, Zuberi pled guilty at a Nov. 22, 2019 hearing (Dkt. 34), after the filing of the Information (Dkt. 1), the advisement of the right to counsel (Dkt. 13), and the arraignment (Dkt. 17). He was represented by Davis at the plea hearing (Dkt. 36, at 2-3), and had an unquestioned right for that representation to be conflict-free.

[29] *See* note 24, *supra*.

Crim. P. 11(d)(2)(B). Yet Davis took no action to advocate for Zuberi based on Arsan's or Chagoury's lenient agreements: He did not move to withdraw Zuberi's plea or suggest doing so; nor did he suggest using such a possibility to modify the agreement or negotiate any sentencing concessions. Instead, loyal to Arsan, he stayed silent to Zuberi, doing nothing to challenge or modify Zuberi's agreement or plea. Davis's "struggle to serve two masters could not seriously be doubted." *Sullivan*, 446 U.S. at 349.

Because of Davis's actual conflict of interest, Zuberi need not show prejudice—that is, he need not show that but for the conflict he likely could have withdrawn his plea. "[T]o assess the impact of a conflict of interest on the attorney's opinions, tactics, and decisions in plea negotiations would be virtually impossible." *Holloway*, 435 U.S. at 490-91. For that reason, prejudice is presumed. *Mickens*, 535 U.S. at 166-68, 173-74, 175; *Sullivan*, 446 U.S. at 349.

On this motion for bail pending appeal, the question is not whether an actual conflict has been shown (though it has), much less whether it would result in plea withdrawal (though it would). It is only whether the question of an actual conflict is substantial, *i.e.*, fairly debatable. On this record, it is more than fairly debatable. Zuberi is entitled to remain on bail pending appeal.

**C. Zuberi's plea agreement should be set aside based on the government's fraudulent inducement and its contradictory argument regarding deletion of emails**

Zuberi's plea agreement was premised on Zuberi timely pleading guilty and admitting his offense conduct, and the government recommending credit for acceptance of responsibility. Zuberi waived indictment or trial, pled guilty to specified offenses, admitted his offense conduct in an agreed statement of facts, and did so in time for the government to avoid preparing for trial. *See generally* Dkt. 36 (plea hearing). The government, for its part, agreed to:

b. Abide by all agreements regarding sentencing contained in

this agreement[; and]

> c. Provided that defendant demonstrates an acceptance of responsibility for the charged offenses as defined in U.S.S.G. § [3]E1.1, including as further explained in its application notes and in particular Note 1(A), recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and, if necessary, move for an additional one-level reduction if available under that section.

Dkt. 5 ¶ 5.b, c. But the government did not recommend acceptance-of-responsibility credit, nor does it appear it ever intended to. Within days of the agreement, the government demanded that Zuberi either concede obstruction of justice—an issue specifically reserved under the plea agreement—or lose acceptance-of-responsibility credit for falsely or frivolously denying it. When Zuberi declined to concede, the government refused to recommend credit for acceptance, both on the threatened false-or-frivolous-denial ground, and also on the ground that obstruction of justice was "antithetical" to acceptance of responsibility under U.S.S.G. § 3E1.1, Application Note 4. Dkt. 120 at 1-2.

This pre-planned strategy—laid out in one of the government's first post-plea filings to this Court (Dkt. 54)—shows the government's promise of acceptance-of-responsibility credit was illusory, and Zuberi's agreement was thus induced by misrepresentation. One of the government's chief arguments for obstruction of justice—deletion of emails—was also likely based on facts the government knew to be contradictory. The government insisted to this Court that Zuberi obstructed justice by deleting relevant emails, even while likely conceding that Zuberi had done so at the direction of the United States government.

**1. The government induced Zuberi's plea by misrepresentation**

"[T]he conditions for a valid plea 'presuppose fairness in securing agreement between an accused and a prosecutor.'" *Mabry v. Johnson*, 467 U.S. 504,

509 (1984) (quoting *Santobello v. New York*, 404 U.S. 257, 261-62 (1971)). "'A plea of guilty made by one fully aware of the direct consequences, including the actual value of any commitments made to him by the ... prosecutor, ... must stand unless induced by ... misrepresentation (including unfulfilled or unfulfillable promises).'" *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). "It follows that when the prosecution breaches its promise ..., the defendant pleads guilty on a false premise.'" *Id.*

In *Puckett v. United States*, 556 U.S. 129 (2009), the Supreme Court qualified the above statements, holding that the prosecution's failure to fulfill a promise that induced a guilty plea does not render the plea involuntary, but rather voidable as a result of the government's breach. *Id.* at 137. Misrepresentation "requires an intent *at the time of contracting* not to perform." *Id.* at 138 n.1 (citing Williston). Here, unlike in *Brady*, *Mabry*, or *Puckett*, the prosecution's conduct shows intent not to perform—not to credit Zuberi for acceptance of responsibility, and certainly not to do so if Zuberi exercised his right to litigate the issues expressly reserved in the agreement.

The government executed Zuberi's plea agreement on October 8, 2019. Dkt. 5 at 20. As it explained to this Court, it did not get what it wanted in the agreement: the government's view of Zuberi's offense conduct was vast, Dkt. 54 at 3-4, but "defendant's admissions in the plea agreement were significantly limited in scope. Defendant only pleaded guilty to (a) a single FARA violation for lobbying work on behalf of Sri Lanka, (b) an unspecified subset of the FECA violations alleged in the information, and (c) tax evasion resulting in a loss[] somewhere [between] $3.5[] and $9.5[] [million]". *Id.* at 4.

Accordingly, *beginning a week after filing the plea agreement*, the government demanded that Zuberi stipulate to obstruction of justice, or face "the impact

a frivolous denial of relevant conduct would have on ... acceptance of responsibility." Dkt. 54 at 6-7. When the defense declined to stipulate, the government "filed its position on obstruction on December 13, 2019" (*id.* at 7)—just three weeks after Zuberi's November 22, 2019 change of plea (Dkt. 36), and well before probation had issued a presentence report or the parties had objected to its accuracy.[30] When Zuberi did contest the government's position on obstruction—as was his right under the plea agreement (Dkt. 5 ¶¶ 22.e, 36; *see* Dkt. 54 at 4), the government followed through, arguing that because Zuberi had (in the government's view) falsely and frivolously denied the government's allegations—an argument not adopted by this Court, Sent. Tr. 40—he should not receive credit for acceptance of responsibility. *See* Dkt. 229 at 1-3; Dkt. 120 at 2-4.

In addition to its "frivolous denial" argument, the government also argued that under U.S.S.G. § 3E1.1 App. Note 4, an "obstruction enhancement (U.S.S.G. § 3C1.1) is ordinarily antithetical to a reduction for acceptance." Dkt. 120 at 1-2.[31] This argument reveals the government's post-plea ultimatum to be a Catch-22: Zuberi could stipulate to the obstruction-of-justice enhancement under § 3C1.1, which under Application Note 4 would mean no credit for acceptance. Or he could decline to stipulate, and contest the enhancement, in which case, in the government's view, his false and frivolous denial would result in no credit for acceptance under Application Note 1(A). Heads the government wins; tails Zuberi loses. Inducing a guilty plea "based on such an illusory

---

[30] *See* Fed. R. Crim. R. 32(e), (f). Probation issued the initial presentence report January 24, 2020 (Dkt. 58), Defendant filed his objections March 23, 2020 (Dkt. 90), and the government responded April 13, 2020 (Dkt. 106).

[31] Application Note 4 provides: "Conduct resulting in an enhancement under §3C1.1 (Obstructing ... Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may apply."

promise would be a violation of due process," *United States v. Franco-Lopez*, 312 F.3d 984, 991 (9th Cir. 2002), and would fall below "the high standard of fair dealing" expected from prosecutors. *United States v. De La Fuente*, 8 F.3d 1333, 1340 (9th Cir. 1993).

Disclaiming any such trap, the government insists it was willing all along to recommend credit under Application Note 4's exception for "extraordinary cases," if Zuberi's acceptance rose to an extraordinary level—by, among other things, paying his entire $16 million in restitution before sentencing, and making additional FARA filings conceding FARA violations beyond the one to which he pled guilty. *See* Dkt. 229 at 2-3; Dkt. 120 at 2. The lead prosecutor submitted a declaration detailing his claimed repeated warnings to defense counsel of what Zuberi had to do to obtain credit. *See* Dkt. 229 at 2.

The first problem for the government is that those warnings and understandings are not contained in the plea agreement. The agreement recites that all of its terms are contained in the four corners of the instrument, with "no promises, understandings, or agreements" outside the written agreement. Dkt. 5 ¶ 38. At the plea hearing, the Court confirmed Zuberi's understanding, and the government's representation, that the written agreement was the entire agreement. Dkt. 36 at 10-11. That agreement says nothing about extraordinary circumstances under Application Note 4; Application Note 4 is not even mentioned. *See* Dkt. 5 at 4-5.

Instead, the agreement says only that defendant must "demonstrate an acceptance of responsibility for the charged offenses as defined in U.S.S.G. § [3]E1.1, including as further explained in its application notes and in particular Note 1(A)." *Id.* Note 1(A) simply describes the first indicium of acceptance: "truthfully admitting the conduct comprising the *offense(s) of conviction,* and truthfully admitting or not falsely denying any additional relevant conduct for

which the defendant is accountable under § 1B1.3 (Relevant Conduct)." § 3E1.1 App. Note 1(A) (emphasis added). That conduct, even under § 1B1.3(a)(1), is limited to the offense of conviction. "[A] defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction ...." App. Note 1(A). Moreover, a defendant who contests the government's allegations does not thereby become ineligible if the Court rules against him: "the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous." *Id.* This Court did not rule that Zuberi's challenges regarding obstruction of justice were false or frivolous. Sent. Tr. 40.

The second problem with the government's argument about Note 4 is its mistake about the timing of obstructive conduct. In the Ninth Circuit,

> the relevant inquiry for determining if a case is an extraordinary case within the meaning of Application Note 4 is whether the defendant's obstructive conduct is *not inconsistent* with the defendant's acceptance of responsibility. Cases in which obstruction is not inconsistent with an acceptance of responsibility arise when a defendant, *although initially attempting to conceal the crime*, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice."

*United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994) (emphasis added). Cases applying this distinction focus on the timing of the charging document and the decision to plead: a defendant who obstructs justice before his indictment, but subsequently accepts responsibility by pleading guilty and does not obstruct justice after his plea, may receive the two-point obstruction enhancement under § 3C1.1, *see* 27 F.3d at 382, but that does not disqualify him from receiving credit for acceptance of responsibility under § 3E1.1, *see id.* at 383.[32]

[32] Other circuits are in accord. *See United States v. Rodgers*, 278 F.3d

Here, the conduct that the government argued was obstruction of justice—deletion of emails (Dkt. 42 at 24-30), and payments to overseas individuals that the government claimed were payoffs to stay outside the U.S. and not testify (*id.* at 6-27) —were all pre-plea conduct, known to the government when it entered into the plea agreement. That conduct may have been used to support the two-point guidelines enhancement for obstruction, *Hopper*, 27 F.3d at 382, but it was not inconsistent with acceptance of responsibility in the plea, nor was it a bar to credit for acceptance under § 3E1.1 and App. Note 4. *See id.* at 383.

The government's promise that induced Zuberi's plea was unfulfilled. And the government's explanation of its strategy (Dkt. 54 at 6-7; Dkt. 229 at 1-3) confirms that was the government's intent from the time of the plea agreement. "[T]he inducement to enter a guilty plea based on such an illusory promise [was] a violation of due process," *Franco-Lopez*, 312 F.3d at 991 (following *Dillon v. United States*, 307 F.2d 445, 449 (9th Cir. 1962)), and rendered Zuberi's plea agreement voidable, *Puckett*, 556 U.S. at 137-38 & n.1.

Although Zuberi's counsel pointed out the government's obligation under the plea agreement to recommend and move for acceptance-of-responsibility credit (*see* Dkt. 136 at 14), he did not move to withdraw the plea. Because prior counsel sought specific performance rather than rescission of the plea agreement, the appellate court may review for plain error. *Puckett*, 556 U.S. at 133-38. That standard is satisfied here.

---

599, 601 (6th Cir. 2002) ("[T]he relevant time period for acceptance of responsibility does not begin until the date that the federal authorities indict the defendant and he becomes aware that he is subject to federal investigation and prosecution.") (citation omitted); *United States v. Bryant*, 398 Fed. App'x. 561, 565 (11th Cir. 2010) (adopting a "bright line rule that a district court should not deny the two-level USSG § 3E1.1(a) reduction on the basis of pre-federal-charge conduct").

*First*, the error was plain or obvious: Plea agreements are contracts, *id.* at 137, and inducing a plea by a false promise, knowing or intending the promise will not be fulfilled, is both a contractual violation warranting rescission, *id.* at 138 n.1 (citing 26 Williston § 69.11), and a due process violation of the most basic sort, *see Santobello*, 404 U.S. at 262; *Mabry*, 467 U.S. at 509; *Franco-Lopez*, 312 F.3d at 990-91. Whether the agreement should be rescinded or specifically enforced is up to the defendant. *See Buckley*, 441 F.3d at 699 n.11 ("[A] defendant may, if he so chooses, elect instead to rescind the agreement"). These principles have been clearly established since *Santobello* fifty years ago.

*Second*, Zuberi's rights were substantially affected: as to his sentence,[33] the government's refusal to recommend acceptance of responsibility made a difference of three levels in the advisory guidelines range, the sentencing starting point. *See* § 3E1.1; *Gall v. United States*, 552 U.S. 38, 49 (2007). An error in the guidelines level "can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *United States v. Bautista*, 989 F.3d 698, 702 (9th Cir. 2021) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016)). This Court did not, like the *Puckett* court, rule that acceptance of responsibility was unheard of because the defendant had continued a "life of crime" after his plea. *Cf.* 556 U.S. at 143; *see id.* at 132-33. Instead, the Court accepted the government's argument and followed its recommendation. Had the government recommended credit for acceptance of responsibility, in "unified front" with Zuberi, *see United States v. Camarillo-Tello*, 236 F.3d 1024, 1028 (9th Cir. 2001), that recommendation likely would

---

[33] In *Puckett*, the Supreme Court held that "the question with regard to prejudice is not whether [the defendant] would have entered the plea had he known about the future violation," but instead, "the 'outcome' he must show to have been affected is his sentence." 556 U.S. at 142 n.4.

have made a difference.[34]

*Finally*, the government's inducing a guilty plea by making a promise it knew or intended to be illusory "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018) (citation omitted). Though the *Puckett* court rejected *per se* rules that a certain type of violation will surpass that threshold in every case, and required application of this prong on a case-specific basis, 556 U.S. at 142, there are no "countervailing factors" here that excuse the government's sharp dealing. *See Rosales-Mireles*, 138 S. Ct. at 1909 & n.4. On the contrary, the "cynicism and bad faith implicit in negotiating an agreement under which [the government] persuaded [Zuberi] to [plead guilty] by offering what appeared to be a reduced sentence but in fact offered him no benefit" fell beneath "the high standard of fair dealing" expected from prosecutors.[35]

**2. The government's obstruction position was inconsistent with facts the government conceded**

"An attorney for the government is a 'representative not of an ordinary party to a controversy, but of a sovereignty whose obligation ... in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). "'The prosecutor's job isn't just to win, but to win fairly, staying well within the rules.'" *Id.* (quoting *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993)). "It is certainly within the bounds

---

[34] If prejudice as to the plea, not the sentence, is required (*but see Puckett*, 556 U.S. at 142 n.4), the issue is not whether the defendant subjectively "would have entered the plea had he known about the future violation," *id.*, but instead objectively whether knowledge that the government's promise was illusory would have led a reasonable defendant to reject the plea. *See Sanchez*, 50 F.3d at 1453. It would have.

[35] *De La Fuente*, 8 F.3d at 1340.

of fair advocacy for a prosecutor, like any lawyer, to ask the [factfinder] to draw inferences from the evidence that the prosecutor believes in good faith might be true. But it is decidedly improper for the government to propound inferences that it knows to be false, or has very strong reason to doubt." *Id.* (citation omitted).

Here, the government's position on obstruction of justice, and consequent lack of acceptance of responsibility, rested heavily on the argument that Zuberi deleted emails that were potentially relevant to the government's investigation, and that he did so specifically intending to obstruct that investigation. *See* Dkt. 42 at 24-30; Dkt. 233 at 10; Dkt. 228 at 27. This Court accepted that argument, and based its findings of obstruction of justice and lack of acceptance of responsibility in significant part on that inference. *See* Sent. Tr. 14, 16, 25-26.

But in September 2020, the prosecution became aware from the defense that during meetings with the defendant, an agency of the United States deleted electronic communications potentially relevant to the government's investigation from devices owned or used by Zuberi. That same agency directed Zuberi to delete other emails, knowing that Zuberi was under criminal investigation. These actions and directions from the U.S. government led to deletion of emails that were potentially relevant to the investigation and helpful to the defendant.

The government was not required to credit the defense information at face value. But on information and belief,[36] we understand that the government

---

[36] No member of the defense team has yet had access to review the portion of the sentencing record that is sealed for CIPA-related reasons. We are submitting this motion now because of its urgency in light of Zuberi's impending report date. When we are able to review the entire record we will supplement this briefing as appropriate.

did accept that information as true, to avoid producing evidence about the government's involvement in the deletion of emails.[37] If the government conceded that a government agency had directed Zuberi to delete emails, it was then no longer free to argue without reservation that Zuberi deleted emails all on his own with obstructive intent. Maintaining that conflicting position crossed the line from permissible inference to urging a theory contrary to the facts as the government set them on the record. Such advocacy violated the government's duty to put truth and justice before simple pursuit of punishment.

Both the government's inducement of Zuberi's plea with an illusory promise and its persistence in arguing Zuberi obstructed justice by deleting emails even after conceding he did so at the government's direction support withdrawal of Zuberi's plea. On this motion, the question is not whether Zuberi has established those challenges to a certainty or even a likelihood. Instead, it is whether the questions are substantial, that is, fairly debatable. They are.

**D. Under Zuberi's plea agreement for the remaining SDNY obstruction count, the agreed advisory guidelines range will likely result in no imprisonment**

As shown above, Zuberi's appeal will present fairly debatable questions that, if resolved in his favor, are likely to result in vacatur of his conviction and withdrawal of his plea on the three counts charged in this District.

---

[37] Such stipulation-to-avoid-evidentiary-challenge unfairly kept Zuberi from being able to present his sentencing mitigation case, based on his cooperation with that government agency, in the most natural and forceful way possible. *See*, *e.g.*, *Old Chief v. United States*, 519 U.S. 172, 187 (1997) ("[M]aking a case with testimony and tangible things not only satisfies [legal formalities], but tells a colorful story with descriptive richness.... Evidence ... has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of the [factfinder] to draw the inferences, whatever they may be, necessary to reach" an accurate assessment).

His conviction on the single count transferred from the Southern District of New York might remain. When a single overall sentence is imposed as a package sentence on multiple counts, as here, and multiple counts are reversed or vacated on appeal, the case is remanded for resentencing on the remaining count(s). On remand, the sentencing package is unbundled, so that the Court may reach an appropriate sentence only on the undisturbed count.[38]

Here, the SDNY count is governed by a separate plea agreement, which contains an agreed Guidelines level of 12, corresponding to an advisory Guidelines range of 10-16 months.[39] With the California pleas and convictions vacated, Zuberi will be presumed innocent of those charges unless and until he is tried and convicted on them. The remaining stipulated Level-12 offense falls within Zone C of the Sentencing Table. Under U.S.S.G. § 5C1.1(d) and (e), such a sentence may be satisfied by substituting half of the term of imprisonment with intermittent confinement, community confinement, or home detention—yielding a potential sentence of 5-8 months in prison, less than the expected more than 12.5-month duration of the appeal.[40] After *Booker*, the Court is not bound by § 5C1.1 or Zone C, and may vary downward to home confinement or probation.

---

[38] "When a defendant is sentenced on multiple counts and one of them is later vacated on appeal, the sentencing package comes 'unbundled.'" *United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1184 (9th Cir. 2000). In these circumstances, the sentence is vacated "to allow the district court 'to put together a new package" reflecting appropriate punishment for the remaining offense. *United States v. Davis*, 854 F.3d 601 (9th Cir. 2017) (citation omitted).

[39] Case No. 2:20-cr-00155-VAP, Dkt. 5 at 9.

[40] As of September 30, 2020, the median time from notice of appeal to disposition for Ninth Circuit appeals was 12.5 months. United States Courts, Federal Court Management Statistics—Summary, September 2020, https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-september-2020. The appeal here, involving CIPA challenges and a sealed record, will likely take substantially longer.

Home confinement or probation would be appropriate for the backdating of a single check during the SDNY's investigation into the 2017 presidential inauguration committee. Home confinement or probation would be appropriate for a first-time, nonviolent offender, particularly one with Zuberi's medical complications, during the ongoing pandemic. A sentence of one year or less would not be served in a federal BOP facility, but instead in a contract, state or local facility that may have higher infection rates, and less stringent protocols, than federal BOP facilities. At a time when the BOP is under direction from the DOJ to reduce the prison population in order to reduce transmission of COVID in prison,[41] a slight downward-varied sentence of home confinement or probation on a single count of having backdated a single $50,000 check makes perfect sense.[42] That short sentence satisfies § 3143(b)(1), and warrants continued release on bail pending appeal.

Dated: May 10, 2021

Respectfully submitted,

**KUTAK ROCK LLP**

By: */s/ David A. Warrington*
David A. Warrington

*Counsel for Defendant*
*Imaad Shah Zuberi*

---

[41] *See* Office of the Attorney General, Memorandum for Director of Bureau of Prisons, *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic* (March 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.

[42] By comparison, former Secretary LaHood, who faced charges for accepting a $50,000 payment for personal expenses *while he was a sitting Cabinet Secretary*, failing to disclose it on required transparency forms, and making misleading statements to the FBI about it, was given a non-prosecution agreement by the same Public Corruption unit of the same U.S. Attorney's Office at the same time Zuberi entered his plea.