1  **KUTAK ROCK LLP**
   David A. Warrington
2  *David.warrington@kutakrock.com*
3  901 East Byrd Street, Suite 1000
   Richmond, Virginia 23219
4  Telephone: (202) 828-2438
5  Facsimile: (202) 828-2400
6
   *Attorney for Defendant Imaad Shah Zuberi*
7

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  UNITED STATES OF AMERICA, | Case No.: 2:19-cr-00642-VAP |
| 11                            | No.: 2:20-cr-00155-VAP |
|     Plaintiff, | |
| 12  v. | *Hon. Virginia A. Phillips* |
| 13  IMAAD SHAH ZUBERI, | **DEFENDANT'S REPLY IN** |
| 14                            | **SUPPORT OF MOTION FOR** |
|     Defendant. | **RELEASE PENDING APPEAL** |
| 15 | |
| 16 | Hearing Date: June 7, 2021 |
| 17 | Time: 9:00 a.m. |
|    | Ctrm: 8A |
| 18 | |

DEFENDANT'S REPLY ISO OF MOTION FOR RELEASE PENDING APPEAL

# TABLE OF CONTENTS

Page

I. Zuberi is not a flight risk ..................................................................................1

II. The government distorts the standard of review ...........................................1

III. The government distorts the basis for the sentence on the Southern District of New York obstruction count ........................................................3

IV. The deferred-prosecution agreements were *Brady* information.................6

V. Zuberi's counsel had an undisclosed actual conflict of interest.................8

    A. Zuberi's right to counsel had attached ..............................................8

    B. Zuberi's counsel had an actual conflict............................................9

VI. Zuberi's plea agreement should be set aside ...............................................11

    A. The government induced Zuberi's plea by an illusory promise ....11

    B. The government's factual position regarding obstruction was contradictory.........................................................................................12

i
DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. United States*, 397 U.S. 742 (1970) ..............................................*passim*

*Cuero v. Cate*, 827 F.3d 879 (9th Cir. 2016)......................................................6

*Hill v. United States*, 368 U.S. 424 (1962) ......................................................1, 2

*Johnson v. Knowles*, 541 F.3d 933 (9th Cir. 2008) ..............................................2

*Kyles v. Whitley*, 514 U.S. 419 (1995)..............................................................7

*Missouri v. Frye*, 566 U.S. 134 (2012)..............................................................9

*Noguera v. Davis*, 290 F. Supp. 3d 974 (C.D. Cal. 2017).................................10

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ..........................................................9

*Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995)...................................3, 8

*Schlup v. Delo*, 513 U.S. 298 (1995) ..................................................................2

*United States v. Allen*, 831 F.2d 1487 (9th Cir. 1987) .........................................3

*United States v. Baker*, 790 F.2d 1437 (9th Cir. 1986) ....................................1, 2

*United States v. Davis*, 854 F.3d 601 (9th Cir. 2017) .......................................5, 6

*United States v. Hayes*, 231 F.3d 663 (9th Cir. 2000) (en banc).........................9

*United States v. King*, 257 F.3d 1013 (9th Cir. 2011) ........................................2

*United States v. Martinez-Martinez*, 69 F.3d 1215 (1st Cir. 1995).....................2

*United States v. McClain*, 133 F.3d 1191 (9th Cir. 1998)...............................4, 5

*United States v. Nagra*, 147 F.3d 875 (9th Cir. 1998)..............................2, 3, 8

*United States v. Olson*, 988 F.3d 1158 (9th Cir. 2021) ...................................8, 9

*United States v. Ortega-Ascanio*, 376 F.3d 879 (9th Cir. 2004) .........................8

*United States v. Ruiz-Alvarez*, 211 F.3d 1181 (9th Cir. 2000) ............................5

**Statutes**

18 U.S.C. § 1512(c) ..................................................................................................5

18 U.S.C. § 3553(a) ..................................................................................................4

22 U.S.C. § 618(a)(2) ................................................................................................5

26 U.S.C. § 7201 ......................................................................................................5

28 U.S.C. § 2255 ...................................................................................................1, 2

52 U.S.C. § 30109(d)(1)(A)(i) ..................................................................................5

**Sentencing Guidelines**

U.S.S.G. Chapter 3, Part D .......................................................................................4

U.S.S.G. § 5G1.2 ..................................................................................................4, 5

**Other Authorities**

Fed. R. Crim. P. 11, adv. comm. notes, 1983 amendment .......................................2

Fed. R. Crim. P. 11(d)(2) ......................................................................................3, 8

Fed. R. Crim. P. 11(h) ..............................................................................................2

Fed. R. Crim. P. 51(b) ..............................................................................................3

Defendant Imaad Shah Zuberi, through counsel, respectfully submits this reply in support of his motion for release pending appeal (Dkt. 368) ("Mot.").[1]

## I. Zuberi is not a flight risk

When the government proposed, and the Court ordered, voluntary reporting on modified conditions, the government tacitly conceded, and the Court tacitly found, that those conditions are sufficient to prevent flight. Mot. 3; Dkt. 350-1 at 2; Dkt. 359 at 6. That has remained true through two post-sentence modifications of conditions and the extension of Zuberi's report date.

The flight-risk question is unrelated to any supposed reason for release, and does not account for monitoring resources (Opp. 2-4).[2] On the only relevant question—whether the release conditions are sufficient to assure reporting—the Court rejected recent requests for a higher bond amount or new curfew or travel restrictions (other than 24-hour notice for trips to Orange County). Dkt. 373 ¶¶ 2-4. Nothing in the government's rehash (Opp. 3-4 & n.3) shows a changed circumstance establishing flight risk.

## II. The government distorts the standard of review

The government begins by claiming Zuberi must show "manifest injustice," *i.e.*, that he is "innocent of the crimes charged." Opp. 5. This claim distorts the standard it invokes, based on cobbled quotations from inapposite cases.

For the "manifest injustice" standard, the government quotes *United States v. Baker*, 790 F.2d 1437 (9th Cir. 1986), which applied the standard for collateral § 2255 motions. *Id.* at 1438 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Assuming (without conceding) that that collateral-motion

---

[1] The government's opposition brief ("Opp.") is Dkt. 377. Unless otherwise noted, all docket references are to the docket in No. 19-00642-VAP.

[2] A probation officer responsible for Zuberi's monitoring stated it generally falls into the "very simple" category, given his set curfew, consistent pattern of movement, and travel restrictions. *See* Dkt. 367-4 ¶ 18.

standard applies to this direct appeal,[3] it is easily satisfied here. The standard is disjunctive—met by *either* a "a fundamental defect which inherently results in a complete miscarriage of justice," *or* an "omission inconsistent with the rudimentary demands of fair procedure." The "miscarriage of justice" prong is associated with factual innocence.[4] The "rudimentary demands of fair procedure" prong includes the types of constitutional violations presented here: *Brady*, conflicted counsel, and inducement of a plea through an illusory promise. The government's claim that Zuberi cannot obtain relief unless he contends he is actually innocent (Opp. 5) aims at the wrong prong of the *Baker/Hill* standard.

The government's cases focus on the factual innocence prong in circumstances divorced from Zuberi's constitutional claims. *United States v. King*, 257 F.3d 1013 (9th Cir. 2011), involved no constitutional claim, only an effort to withdraw a plea because defendant "was unhappy with his sentence." *Id.* at 1024. In *Baker*, the fraudulent inducement claim was not a *Santobello* claim, like Zuberi's, contending the plea was induced by an illusory promise. Baker contended only that he pled after a prosecutor's false statement about how many witnesses would implicate him—a statement the court found not false when made. *See* 790 F.2d at 1438. Although *United States v. Nagra*, 147 F.3d 875 (9th Cir. 1998), involved *Brady* claims, the court ruled those allegations did

---

[3] *Baker*'s application of *Hill*'s § 2255 standard to a direct appeal has been questioned, *see United States v. Martinez-Martinez*, 69 F.3d 1215, 1219-20 (1st Cir. 1995), and is at odds with Rule 11(h)'s prescription of harmless-error review. *See* Fed. R. Crim. P. 11, adv. comm. notes, 1983 amendment, Rule 11(h) (stating "the *Hill* standard is obviously inappropriate" on direct appeal). This Court need not resolve that difficulty, because this appeal easily meets the second prong of the *Baker*/*Hill* standard.

[4] *See, e.g., Johnson v. Knowles*, 541 F.3d 933, 935-37 (9th Cir. 2008) (discussing *Schlup v. Delo*, 513 U.S. 298 (1995)).

"not involve information unavailable to Appellants." *Id.* at 881. *Nagra*'s discussion of factual innocence did not address the fair procedure prong. *See id.*

Zuberi's opening brief explained his constitutional claims. Both a *Brady* violation and an undisclosed actual conflict of interest can render a guilty plea not voluntary. *See* Mot. 8, 11. The government's inducement of a guilty plea by illusory promises violates Due Process. *See id.* at 14-17, 19. The government's blindered focus on factual innocence ignores that these constitutional violations fall squarely within the "rudimentary demands of fair procedure" prong.[5] The *Baker/Hill* "manifest injustice" standard is no obstacle to review.

The government further implies that Zuberi has conceded all his challenges are subject to plain-error review. Opp. 4-5. This too is a distortion. Only Zuberi's third appellate issue—that his plea agreement should be set aside for fraudulent inducement—is reviewable for plain error. *See* Mot. 19-22. The *Brady* and conflict-of-interest issues are constitutional claims reviewed de novo. *See Sanchez*, 50 F.3d at 1453; *United States v. Allen*, 831 F.2d 1487, 1494 (9th Cir. 1987). Those issues go to the voluntariness of the plea itself, fall within that exception to the plea agreement's appeal waiver (Dkt. 5 ¶ 27), and do not require rescinding the plea agreement. Moreover, because they were undisclosed, Zuberi's counsel had no opportunity to object, and he may not be relegated to plain-error review for failure to object. *See* Fed. R. Crim. P. 51(b).

### III. The government distorts the basis for the sentence on the Southern District of New York obstruction count

The government argues that even if Zuberi is successful he will still be imprisoned longer than the appeal, because "the tax offense alone resulted in a

---

[5] It is also difficult to see how factual innocence could ever be shown in a direct appeal after a guilty plea, given the restriction to the plea record. Yet Rule 11(d)(2) plainly allows direct-appeal challenges to guilty pleas.

Sentencing Guideline range of 97 to 121 months imprisonment," and the sentence on the Southern District of New York obstruction count is 84 months. Opp. 6-7.  The first contention misconceives Zuberi's appeal.  The second grossly distorts the basis of the sentence on the SDNY count.

Had he known the USAO was giving no-conviction dispositions for similar allegations, Zuberi would hardly have refused only a FECA plea while still pleading to a tax offense under ten-year Guidelines (Opp. 6).  That is especially true where his lawyer's undisclosed other client resolved both the FECA allegations *and a related five-year criminal tax investigation* with no conviction, and Chagoury was given such treatment because of his "unique assistance to the U.S. government."  See Mot. 5-7 & nn.9, 13, 17.  Recognizing that Zuberi's plea to all three counts rises or falls together, the government asserts that if Zuberi prevailed on those claims, he would still face 84 months on the SDNY obstruction count.  Opp. 6-7.  This utterly baseless contention ignores the basis for the current sentence, the government's representations to this Court, and the terms of the SDNY plea agreement.

Zuberi's current sentence is a single sentence of 144 months, covering four counts of conviction.  As the Guidelines direct, it was derived by calculating the offense level for each of the California counts, selecting the highest one, then adjusting it under the rules for Multiple Counts set out in U.S.S.G. Chapter 3, Part D.  The highest-level offense was the Tax count (level 30), which was adjusted upward to level 32 under the Multiple Count rules, yielding a range of 121 to 151 months.  Sent. Tr. 14-16.  Considering the non-Guidelines FARA offense and the 18 U.S.C. § 3553(a) factors, the Court sentenced Zuberi to a total sentence of 144 months, Sent. Tr. 28, 31, 55, then apportioned those 144 months among the four counts under U.S.S.G. § 5G1.2. Sent. Tr. 55.

That 144-month sentence was a "single, unified sentence." *United States*

4

DEFENDANT'S REPLY ISO MOTION FOR RELEASE PENDING APPEAL

*v. McClain*, 133 F.3d 1191, 1193 (9th Cir. 1998). "When a defendant is sentenced on multiple counts and one [or more] of them is later vacated on appeal, the sentencing package comes 'unbundled,'" and the district court sentences anew on the count(s) that remain. *United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1185 (9th Cir. 2000); *United States v. Davis*, 854 F.3d 601, 606 (9th Cir. 2017); *McClain*, 133 F.3d at 1193.

The government's claim that the sentence on the remaining SDNY count is 84 months is a fiction. Seven years is not this Court's considered judgment about the right punishment for backdating a single check refunding a $50,000 contribution to the 2017 presidential inaugural committee—the entirety of the SDNY offense conduct.[6] Instead, that 84 months is simply an arithmetic building block, used to stack all four counts to reach the total sentence.[7] The actual portion of the current sentence that is *substantively* attributable to the SDNY obstruction count is: *not a single day*. The Court did not consider or impose any time tied to the SDNY count, because *the government told it not to*—assuring the Court the SDNY count "*makes no difference to the sentence .... It has*

---

[6] *See* Plea Hrg. Tr. 19-20, Dkt. 31; Plea Agm. ¶ 9, Dkt. 5 (both in No. 20-cr-00155-VAP).

[7] Under U.S.S.G. § 5G1.2, the default rule is to impose the total punishment on each count, concurrently. *See* §§ 5G1.2(b), (c), (d). But if such concurrent sentencing does not reach the total punishment, then the Court is to stack counts consecutively, "but only to the extent necessary to produce a combined sentence equal to the total punishment." § 5G1.2(d).

Here, the statutory maximum on each of the California counts was 60 months. *See* 22 U.S.C. § 618(a)(2) (FARA); 26 U.S.C. § 7201 (Tax Evasion); 52 U.S.C. § 30109(d)(1)(A)(i) (FECA). The Court ran those counts concurrently. Sent. Tr. 55. Then, to reach the total term of 144 months, the Court imposed 84 months on the SDNY count, to run consecutively to the 60 months. *See id.* Those seven years were allocated to the SDNY count because that statute's 20-year maximum allowed it, *see* 18 U.S.C. § 1512(c); U.S.S.G. § 5G1.2(d), not because of any connection to the SDNY offense conduct.

*no impact.*" Sent. Tr. 48 (emphasis added).

Thus, *every day* of the current 144-month sentence was imposed based on the three California counts. If Zuberi's challenges to those counts are resolved favorably to him, that entire sentence will be vacated, and remanded for sentencing anew with specific performance of the SDNY plea agreement and count alone. *See Davis*, 854 F.3d at 606.

That sentencing will start from scratch.[8] The starting point would be the agreed factual basis (the backdating of a single $50,000 check, *see* note 6, *supra*), the "to wit" clause of the Information's statutory charging paragraph, Dkt. 1 ¶ 12 (same), and the agreed offense level of 12. Dkt. 5 ¶ 12; Mot. 24. Zuberi would be entitled to specific performance of that plea agreement,[9] which would yield a Zone C range allowing 5 months' imprisonment and 5 months' home confinement—already shorter than the expected appeal—with room for a downward variance to home confinement or probation. *See* Mot. 24-25. Though the Court would also be free to vary upward, it would be sentencing only on the SDNY count, not the vacated counts. *See, e.g., Davis*, 854 F.3d at 606. The government's position that the Court would simply reimpose 84 months—a 525% upward variance—has no basis in reality.

IV. **The deferred-prosecution agreements were *Brady* information**

The government's argument that DPAs in unrelated cases do not bear on defendant's guilt (Opp. 7-8) misses the point. Zuberi's argument is that they bore on sentencing, because they could be used to directly rebut one of the government's central sentencing arguments, and to argue unwarranted disparity, Mot. 4, and they were material to Zuberi's decisions whether to enter the plea

---

[8] Neither the Probation Department, nor the parties, nor this Court have ever addressed that count, because the government assured the Court it was unnecessary. *See* Plea Hrg. Tr. 14-15, 28, No. 20-cr-00155-VAP (June 30, 2020).

[9] *See, e.g., Cuero v. Cate*, 827 F.3d 879, 890 & n.14 (9th Cir. 2016).

agreement and whether to plead or to withdraw the plea, *id.* at 8.

The government's ipse dixit that someone else's DPA "bears no relevance ... to the punishment that the defendant should receive," and therefore was not mitigating, blinks reality. In the real world, where a prosecutor argues that "[c]landestine foreign efforts to subvert U.S. democratic processes in recent years have caused a significant portion of the body politic to lose faith in our public institutions," and that a decade-plus sentence is therefore "necessary to deter other would-be FARA and FECA offenders from compromising our elections and institutions with foreign cash," Dkt. 233, at 2, it would be a powerful response for either the defense or the Court to ask: "If a decade in prison is necessary to deter such individuals, how is it that your office, right now, is granting deferred prosecution—no conviction or penalty at all—to foreign nationals who funneled hundreds of thousands of dollars in foreign cash into the same U.S. election cycles for which you are prosecuting Mr. Zuberi?"[10]

Here, the Court echoed the government's argument at sentencing, stating that low voter turnout due to perceptions of a money-corrupted system "illustrates or demonstrates how important this case is," and shows the need "to deter others who might be inclined to commit these kinds of offenses." Sent. Tr. 27, 28, 29; *cf.* Dkt. 233, at 7. This resonance suggests at least a reasonable likelihood that the prosecution's suppression of the DPAs might have affected the Court's consideration. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Even if suppression of the DPAs did not affect the sentence, it affected Zuberi's decision to plead, and not to seek withdrawal when he could have.

---

[10] The government's suggestion that the Deputy Chief who made this argument might not have known of the DPAs (Opp. 8 n.6) stretches credulity. In any event, the government now makes clear that the Chief of the same section, who personally oversaw the Chagoury/Arsan matter, also personally participated in Zuberi's case. *See* Opp. 12-13; Lucero Decl. Ex. 1, at 2.

The issue is "whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead." Mot. 8 (quoting *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995)). Here, it is objectively unlikely that if Zuberi had known of this USAO's no-conviction dispositions, he would have pled guilty under agreed Guidelines factors calling for a decade or more in prison. At the very least, that likelihood is fairly debatable or fairly doubtful. Mot. 8.

## V. Zuberi's counsel had an undisclosed actual conflict of interest

### A. Zuberi's right to counsel had attached

The government argues that because Zuberi's plea negotiations preceded his formal charge, his right to counsel had not attached. Opp. 9-10. Even if that were true, Zuberi's right to counsel unquestionably attached before his plea hearing, where he was represented by the same counsel. Mot. 12 n.28. By that time he had been charged (Dkt. 1, Oct. 22, 2019), advised of his right to counsel (Dkt. 13, Oct. 30, 2019), and arraigned (Dkt. 17). In the month between his October 22 charge and his November 22 plea, he could have declined to plead. And in the fourteen months between his plea and sentencing, he could have moved to withdraw it for a fair and just reason (Fed. R. Crim. P. 11(d)(2)(B))—a standard that is "applied liberally," *Nagra*, 147 F.34d at 880, and does not require that the plea be invalid. *United States v. Ortega-Ascanio*, 376 F.3d 879, 884-85 (9th Cir. 2004). He did none of those things, because his attorney did not inform him of the DPAs, out of loyalty to his other client. *See* Mot. 10-13.

Moreover, Zuberi had a right to counsel even during the pre-charge plea negotiations, as two of the three judges in *United States v. Olson* acknowledged. Chief Judge Thomas, concurring in the judgment, noted that "there is a pre-indictment Sixth Amendment right to counsel" where, as here, the government has signified "a sufficient commitment to prosecute." 988 F.3d 1158, 1164-67

(9th Cir. 2021). Judge Berzon, concurring in part, noted that such a commitment to prosecute "is inherent" where, as here, "the government makes a specific pre-indictment plea offer." *See id.* at 1168. Further, the Ninth Circuit's bright-line rule in *United States v. Hayes*, 231 F.3d 663 (9th Cir. 2000) (en banc) cannot be reconciled with the Supreme Court's recognition in *Padilla v. Kentucky*, 559 U.S. 356 (2010) and *Missouri v. Frye*, 566 U.S. 134 (2012) that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Frye*, 566 U.S. at 141 (quoting *Padilla*, 559 U.S. at 373); *accord id.* at 143. Even the *Olson* per curiam opinion recognized that "in criminal cases today, plea negotiations are 'almost always the critical point' at which a defendant's fate is sealed." 988 F.3d at 1163 (quoting *Frye*, 566 U.S. at 144).

To the extent *Olson* reluctantly held otherwise, it recognized the issue is ripe for en banc review. *See* 988 F.3d at 1161 (per curiam); *id.* at 1168 (Thomas, C.J., concurring in the judgment); *id.* at 1170 (Berzon, J., concurring) (urging en banc review "at the first opportunity"). Zuberi maintains and will preserve this position for further review. As the three opinions in *Olson* demonstrate, this question alone is "fairly debatable." *See* Mot. 3-4.

### B. Zuberi's counsel had an actual conflict

While acknowledging the governing law, Opp. 10-11, the government claims there is no actual conflict because Zuberi's case is neither factually related nor adverse to Arsan's or Chagoury's. Opp. 11-13. But the conflict for Zuberi's lawyer, Davis, was simple: Zuberi had an interest in knowing that, at the same time the government was insisting he plead and agree to guidelines calling for a decade or more in prison, the *same section of the same USAO* was granting no-conviction dispositions to foreign nationals also accused of funneling foreign cash in six-figure sums into U.S. political campaigns (and, in

Arsan's case, resolving a related five-year criminal tax investigation). Arsan, Davis's other client, had precisely the opposite interest: keeping the DPAs secret. After all, the prosecutors were not revealing them, and Arsan was receiving an enormous benefit from the prosecutors—escaping prosecution. He had a powerful interest not to upset that cart. Davis, lawyer to both Arsan and Zuberi, could not faithfully serve both. He chose to serve Arsan, and stay silent. His advocacy for Zuberi was thereby impaired. *See* Mot. 10-12.

It does not matter that Arsan's and Zuberi's matters were separate, or that their merits interests were not adverse. A lawyer's representation of clients in different matters creates a conflict if his duty to one impairs his representation of the other. *See, e.g., Noguera v. Davis*, 290 F. Supp. 3d 974, 1010-11 (C.D. Cal. 2017) (attorney who represented son in murder case and mother in her divorce had actual conflict, because his duty of confidentiality to mother impaired any mitigation defense for the son). Just so here: Arsan's interest was in keeping his DPA confidential; Zuberi's interest was in knowing about it, which would have informed his decision whether to plead. That conflict is enough.

And that conflict—undisclosed and unwaived—impaired Davis's representation. Davis did not fully inform Zuberi of all he knew that could inform Zuberi's decisions—whether to enter into the plea agreement the USAO offered; whether to plead guilty, and to maintain that plea at a time when he could withdraw it (either freely before his plea hearing, or for fair and just reason before sentencing). Nor did he use his knowledge to advocate for Zuberi—either in negotiating his plea agreement; refusing to agree or plead; withdrawing the agreement or plea; or using the information as leverage to obtain a better deal. Such "sealing his lips" was enough. Mot. 10.[11]

---

[11] It does not matter that Davis sought a DPA for Zuberi, what AUSA O'Brien's response was (Opp. 12), or even (*arguendo*) whether he secretly used

Because Davis's advocacy was compromised, prejudice is presumed. Mot., at 9-11.[12] Zuberi's right to conflict-free counsel was impaired, and with it, so was the plea's voluntariness. Mot. 11; *Brady v. United States*, 397 U.S. 742, 749 & n.6 (1970). At a minimum, the question is substantial.

## VI. Zuberi's plea agreement should be set aside

### A. The government induced Zuberi's plea by an illusory promise

The government insists it negotiated a bespoke bargain for above-and-beyond acceptance of responsibility, and that it always fully intended to hold up its end. The government vigorously waves the prosecutor's declarations, both then and now, detailing the government's account of behind-the-scenes exchanges between counsel. Opp. 14-17 (invoking Dkt. 267 & Dkt. 377 at 30).

There are two problems with the government's position. The first is that all of these details of this alleged bespoke agreement are outside the plea agreement, which provides that "there are no promises, understandings, or agreements" outside the written agreement. Dkt. 5 ¶ 38; *see* Mot., at 17-18.

The second is timing. The government laid out its dissatisfaction with Zuberi's plea agreement, and its strategy for rectifying that, in one of its first

---

the fact of Chagoury's or Arsan's DPA as part of such advocacy. Nor does counsel's submission of a sentencing disparity argument based on statistical surveys of sentences imposed in unrelated cases matter (*id.*). That argument could not have had the force with this Court that comparison to other dispositions being given at the *same time* by the *same office* headed by the *same Chief* and Deputy Chief. Nor does it matter that the prosecutors credited others' cooperation and acceptance of responsibility, while refusing to credit Zuberi's (Opp. 14). Zuberi was entitled to compare their cooperation in his own defense and to have a loyal and zealous advocate make that case for him.

[12] Thus, it does not matter if the DPAs would have changed the unwarranted disparity ruling (Opp. 13) or the ultimate sentence (Opp. 8 n.7). What matters is that Davis *did not even make these arguments*, or share his knowledge that would have let Zuberi decide whether to make them.

post-plea filings with this Court.  *See* Dkt. 54 at 6-7 (Jan. 10, 2020).  That submission detailed the government's demands of the defendant in the weeks following Zuberi's October 2019 plea agreement.  *See* Mot. 15.  Only after the defense called out the government's trap (Dkt. 136, June 16, 2020) did the prosecutor submit his declaration claiming this had all been well understood between counsel behind the scenes.  *See* Dkt. 267 (O'Brien Decl. dated Nov. 9, 2020).  A comparison between the written terms of the plea agreement (which does not contain the detailed understanding for extraordinary acceptance the government claims, *see* Dkt. 5 ¶ 5.c), the government's description of its position in its early, candid submission (Dkt. 54, Jan. 10, 2020), and the positions the government ultimately took (Dkt. 229, Nov. 9, 2020; *see also* Dkt. 120, May 18, 2020) reveal that from the beginning the government never intended to grant credit for acceptance.  *See* Mot. 15-19.  The government's May 2020 fig-leaf assurances ("*at this time*," Dkt. 120, quoted in Opp. 15) do not hide that intention.

### B.  The government's factual position regarding obstruction was contradictory

When Zuberi filed his motion, his counsel had not yet been cleared to review the full record.  Accordingly, his argument regarding the government's position on email deletion was submitted on information and belief (Mot. 22-23).  On May 19, the government submitted a Classified Opposition.  *See* Dkt. 379.  Zuberi will submit his reply to that Classified Opposition under seal.

Dated: May 24, 2021　　　　　**KUTAK ROCK LLP**
　　　　　　　　　　　　　　By: */s/ David A. Warrington*
　　　　　　　　　　　　　　David A. Warrington
　　　　　　　　　　　　　　*Counsel for Defendant Imaad Zuberi*